[L. A. No. 23066. In Bank. Apr. 27, 1954.]

HOWARD D. THOMAS, JR., Appellant, v. HUNT MANU-FACTURING CORPORATION (a Corporation) et al., Respondents.

*Assigned by Chairman of Judicial Council.

Donald C. McGovern, Todd W. Johnson, Edward D. Robertson, Gilbert E. Harris and Thomas C. Cannan for Appellant.

Desser, Rau, Christensen & Hoffman and Robert Haves for Respondents.

SCHAUER, J.—Plaintiff brought suit to recover an alleged unpaid balance ($3,894.51 principal plus interest and attorneys' fees) on a promissory note (original principal $15,000) and a written contract for the payment of money, and to foreclose a mortgage and a chattel mortgage securing the obligations, all documents, together with a $5,000 note hereinafter mentioned, forming parts of the same transaction. Defendants, who had paid approximately four-fifths of the principal sums, together with accruing interest, by way of answer and counterclaim allege in detail the terms of the notes and the contract, set out the amounts paid by them and the dates of the several payments, and aver that of the amounts they had paid, the sum of $1,119.48 was usurious interest.[1] The trial court found in favor of defendants and entered judgment crediting them with $3,358.44 (treble the amount of the usurious payments) on the balance unpaid on the principal of the obligations sued on.

Plaintiff appeals from the judgment and from the order denying his motion for a new trial. An order denying a motion for a new trial is a nonappealable order and will be dismissed. (Code Civ. Proc., § 963; *Clemons* v. *City of Los Angeles* (1950), 36 Cal.2d 95, 98 [222 P.2d 439].) The controlling question requiring determination is the sufficiency of the evidence to support the trial court's finding and conclusion that the contract called for the payment of usury. The evidence hereinafter epitomized amply supports the essential finding and, hence, requires affirmance of the judgment.

■ It is, of course, to be understood that in stating the evidence we are bound to consider that the trial court resolved all substantial conflicts and drew all reasonable inferences in favor of the defendants. (*Pewitt* v. *Riley* (1945), 27 Cal.2d 310, 313 [163 P.2d 873].) The defendant Hunt Manufacturing Corporation, wholly owned by defendant Willis E. Hunt, had a substantial business in Costa Mesa, California, where it was engaged in building plastic boats. More cash working capital was needed and in about February or

---

[1]Cal. Const., art. XX, § 22, provides: "No person . . . shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 per cent per annum upon any loan or forbearance of any money . . ."

Deering's General Laws, Act 3757, § 3, provides that "Every person . . . who for any loan or forbearance of money . . . shall have paid . . . any greater sum . . . than is allowed . . . may . . . recover . . . treble the amount of money so paid . . . providing . . . action shall be brought within one year after such payment . . ."

March of 1950 defendant Hunt began negotiating with the plaintiff, hoping to interest him in the business to the end of augmenting the cash available. It was first proposed that plaintiff should contribute $20,000 and receive 50 per cent of the stock of defendant corporation. Early in May plaintiff inspected the plant and the corporate books and records; he then told Hunt that the deal did not look good but after further talks Thomas offered to pay $15,000 for 55 per cent of the corporate stock and to loan the corporation $5,000. To carry out that plan the corporation, on May 24, 1950, executed its note in favor of Thomas for $5,000 and on May 30, 1950, another note in his favor for $15,000 and, on the same date, a contract providing that upon approval by the Commissioner of Corporations the corporation would issue to Thomas enough of its stock to give him 55 per cent of all outstanding stock in return for cancellation of the $15,000 note. Presumably the entire $20,000 was advanced by Thomas. The contract further provided that ''Hunt and Thomas shall receive such salaries as the Board of Directors may from time to time determine.'' It is important to note that the board never approved a salary for Thomas.

In the middle of June, 1950, Hunt left on a trip to Texas to deliver some unfinished hulls and to set up a distributorship for business in Texas, Louisiana and Oklahoma. While on this trip he received a telephone call from plaintiff to the effect that the latter wanted to get out of the deal and that defendant Hunt should return immediately. Soon after this conversation, plaintiff told Mr. Hawley, the plant manager, that he had discovered some irregularities, that he didn't believe that there was a wilful intent to defraud, but that he would deny his lack of belief in that respect if ever asked. When defendant Hunt arrived back in California plaintiff told him substantially the same story he had already told Hawley. Once again he said in substance that he would deny his lack of belief that there was wilful intent to defraud if he was ever asked. At this time it appeared that the business, financially, was in a precarious condition. During Hunt's absence plaintiff had taken $4,305.49 of the corporation funds out of the corporation's bank account and placed it in his own name, assertedly as trustee for the corporation, leaving the corporation with a balance in its own account of less than $200; he had stopped all production; and he had reduced the production staff of 15 or 18 men to a skeleton crew of four or five men.

At this time, and under the related conditions, plaintiff demanded that all the money he had loaned or otherwise advanced to the corporation be returned immediately. Defendant Hunt pleaded for time and thereupon plaintiff had the agreement, which forms the basis for the finding of usury, drawn up. The agreement was executed on June 30, 1950. It provides that plaintiff shall keep the $4,305.49 which he had taken from the corporate bank account; that $10,000 was to be repaid to him over the next ten weeks at the rate of $1,000 a week; and that beginning September 15, 1950, payments of $200 a month, plus 6 per cent interest on any unpaid balance, be made until the $20,000 which plaintiff had lent defendant corporation was repaid. Following this, in paragraph four of the agreement is the provision which the court found to be by way of subterfuge, and to be usurious. It provides "That Hunt and the corporation do hereby jointly and severally promise to pay Thomas [plaintiff] beginning September 15, 1950, $100 per month as a fee for Business Management Engineering services *which have been rendered to the corporation,* and this $100 per month payment is to continue until Thomas has received his $20,000 principal plus interest provided for in paragraph 3, above. *However, this Engineering service payment will not enter into the computations for reimbursement of the $20,000 principal.*" (Italics added.) In an amendment to the agreement it was further provided that if payments were made "as stipulated herein, there will be no interest on said loans except the interest commencing September 15th, 1950 as provided in paragraph #3 . . ." When defendant Hunt objected to the terms of the agreement plaintiff told him that if the agreement was not signed, legal proceedings would be commenced and the plant would be closed, and that a man was standing by in Santa Ana (the county seat) to file the papers.

Under the above related circumstances the contract was executed by defendant for himself and for the corporation and mortgages were executed to secure the payment of the total indebtedness to plaintiff of $20,000. All the payments due under the terms of the contract were made by defendants to and including June 15, 1951. Thereafter defendant Hunt, having been advised by counsel that the agreement in his opinion was usurious, refused on that ground to make further payments and the present action was then filed by plaintiff.

The trial court found that the agreement was a usurious transaction and that "in truth and in fact said plaintiff did

not, had not, has not, and at no time did he ever render any services of any kind or nature whatsoever to said defendant corporation . . . that said provision for alleged services was a subterfuge made for the purpose of evading the Usury laws of the State of California, and the defendants did agree to said demands of the plaintiff under duress and coercion and threats by the plaintiff to destroy the defendants' business if defendants did not accede to plaintiff's demand, and the defendants would not have entered into such an agreement to pay such usurious interest if the plaintiff had not so coerced and threatened the defendants with destruction of the defendants' business.''

Plaintiff argues strongly that the portion of the above quoted finding reading that ''plaintiff did not, had not, has not, and at no time did he ever render any services of any kind or nature whatsoever to said defendant'' is not supported by the evidence and that, in consequence, the entire finding must fall. This contention is without substantial merit. The evidence would amply sustain inferences that any acts done by plaintiff in connection with or in relation to the defendant's business were done not to benefit the corporation defendant but to secure personal benefits and advantages to plaintiff. Furthermore, regardless of whether plaintiff did or did not render services of some nature for the defendant corporation, that part of the finding is not essential to the further part determining ''that said provision for alleged services was a subterfuge made for the purpose of evading the Usury laws of the State of California, and the defendants did agree to said demands of the plaintiff under duress and coercion . . .''

The quoted agreement was drawn by plaintiff. If there be ambiguity in its terms the doubt was properly resolved against him. There is not the slightest proof that Thomas was ever employed by the corporation to render services for a salary or fee. The agreement of May 30, 1950, it will be remembered, provided that ''Hunt and Thomas shall receive such salaries as the Board of Directors may from time to time determine.'' The June 30 agreement made one month later after plaintiff's appropriation, assertedly as ''trustee,'' of nearly all of the corporation's cash on hand, and under other circumstances which strongly indicate an attempt at coercion, gives advantages to plaintiff which go far beyond the contemplation of the parties as indicated in their agreements of May 24 and May 30. The provision

of the June 30 agreement that "Hunt and the corporation . . . promise to pay Thomas beginning September 15, 1950, $100 per month as a fee for Business Management Engineering services *which have been rendered to the corporation,* and this $100 per month payment *is to continue* until Thomas has received his $20,000 principal plus interest . . . However, this Engineering service payment will not enter into the computations for reimbursement of the $20,000 principal" (italics added), on its very face is supportive of the trial court's finding that it was a subterfuge and was designed not to pay for engineering services which had been rendered but, rather, to constitute additional compensation for the loan and forbearance of money. Furthermore there was evidence that Hunt and Thomas orally agreed that their salaries would be equal, that neither would be paid any salary until the corporation made enough money to warrant payments to both of them, that the corporation never had reached such a stage, that Hunt received no salary and that Thomas had claimed none until he presented the June 30 agreement.

█ Plaintiff argues further that intent is an element of usury and that since neither Hunt nor Thomas, according to their testimonies, had a conscious intent to evade the usury law, the finding of usury cannot be sustained. But the intent sufficient to support the judgment does not require a conscious attempt, with knowledge of the law, to evade it. The conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which he receives; if that amount is more than the law allows, the offense is complete. (*Klett* v. *Security Acceptance Co.* (1952), 38 Cal.2d 770, 786 [242 P.2d 873].)

█ The existence of the requisite intent is always a question of fact and in ascertaining the fact the court may look to all the circumstances surrounding the transaction.

█ Substance is more important than form and the name with which excessive payments be labeled or the guise under which they be exacted is quite immaterial if in truth they be for the forbearance of money. (*Terry Trading Corp.* v. *Barsky* (1930), 210 Cal. 428, 432 [292 P. 474].)

Plaintiff's contentions, although avowedly addressed to the proposition that the evidence as a matter of law does not support certain findings, actually resolve into arguments on the weight of the evidence. From what has been elaborated above it appears that the evidence amply supports the trial

court in all essential findings and that no miscarriage of justice is shown.

For the reasons above stated, the judgment is affirmed and the appeal from the order denying plaintiff's motion for a new trial is dismissed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Spence, J., and Bray, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.