[Civ. No. 22409. Second Dist., Div. Three. May 8, 1958.]

THERESA WHEELER, Appellant, v. SUPERIOR MORTGAGE COMPANY (a Corporation) et al., Respondents.

Herbert Colden for Appellant.

Milton N. White for Respondents.

WOOD (Parker), J.—Action to recover treble the amount paid as interest on an alleged usurious loan, and to enjoin a foreclosure sale based on another alleged usurious loan. A motion for a nonsuit was granted. Plaintiff appeals from the judgment.

Appellant contends that the motion for a nonsuit was insufficient in that it did not specify the grounds on which the motion was made, and that the evidence was sufficient to support a judgment in favor of appellant.

In the first cause of action, plaintiff alleged that prior to December 7, 1953, the defendants, other than Title Insurance and Trust Company, entered into a conspiracy to commit fraud and usury; about December 7, 1953, in furtherance of such conspiracy, defendants Superior Mortgage Company and Gluskin falsely represented that Superior and Gluskin would obtain a loan of $1,400 from Guaranty Corporation of America, that Superior would charge a commission of $400 for its services, and Superior would receive such commission from the proceeds of the loan; in reliance upon such repre-

sentations, plaintiff borrowed $1,400 from Guaranty and she executed, and delivered to Guaranty, a note for $1,400 and a trust deed to secure the note; Guaranty assigned the note to defendant Brown; at the time the loan was made, Superior, Guaranty, and Brown demanded, and plaintiff paid to them, for the use of said $1,400, the sum of $400 in addition to interest of 10 per cent per annum as provided in the note; at the time the loan was made, Superior demanded and received the further sum of $100 as a charge for expenses; about March 29, 1954, plaintiff paid $1,372.45 to Brown in payment of the note.

In the second cause of action, plaintiff incorporated by reference the allegations as to conspiracy which were set forth in the first cause of action. Plaintiff alleged further therein that about March 29, 1954, in furtherance of such conspiracy, defendants Superior and Gluskin falsely represented that Superior would obtain a loan of $13,500 from Guaranty, that Superior would charge $1,000 for its services and would receive such commission from the proceeds of the loan; in reliance on the representations, plaintiff borrowed $13,500 from Guaranty and she executed and delivered to Guaranty a note for $13,500 and a trust deed to secure the note; Guaranty assigned the note to defendant Sander; at the time the loan was made, Superior, Guaranty, and Sander demanded, and plaintiff paid to them, for the use of said $13,500, the sum of $1,000 in addition to interest of 10 per cent per annum as provided in the note; plaintiff paid nothing on the $13,500 note, other than the $1,000; about September 3, 1954, Sander declared that plaintiff had defaulted on the $13,500 note, and he demanded that Title Insurance and Trust Company, as trustee, sell plaintiff's property to satisfy Sander's claim; plaintiff offers to pay to the trustee of the $13,500 trust deed the sum of $12,500 as satisfaction of the obligation; plaintiff tendered $12,500 to defendant Sander as satisfaction of the obligation.

The prayer was that it be adjudged that both loans were usurious and bore no interest; the $1,400 loan was a $1,000 loan; the $13,500 loan was a $12,500 loan; plaintiff recover from defendants Superior, Guaranty, Gluskin, the Calhouns, and Winthers treble the amount of $522.45, which is "the amount of interest collected on the purported $1,400 loan"; Sander and Title Insurance and Trust Company be enjoined from selling plaintiff's property under the trust deed; and the $13,500 note and trust deed be declared void.

Defendants Superior, Guaranty, Gluskin, the Calhouns, and Winthers filed an answer in which they denied the allegations of the complaint, which are set forth above. Sander filed a separate answer. Prior to trial Sander assigned the $13,500 note and the trust deed (securing the note) to Guaranty, and plaintiff dismissed the action as to him. The record on appeal does not show that Brown or Intrastate Escrow Company was served or that they appeared in the action. The evidence will be stated and considered in the light most favorable to plaintiff. (See *Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833, 837-838 [161 P.2d 673, 164 A.L.R. 1].)

In December, 1953, plaintiff went to 9010 Wilshire Boulevard and consulted with H. John Gluskin, president of Superior Mortgage Company, in regard to refinancing the second trust deed on her home. At that time, plaintiff's home was encumbered with first and second trust deeds, in the approximate amounts of $7,500 and $2,800. Plaintiff told Gluskin that she wanted to borrow $1,000 more. Gluskin told plaintiff that he would refinance the second trust deed. Subsequently Gluskin told plaintiff that it would be less expensive for her to get a third trust deed for $1,000 at 10 per cent than it would be for her to refinance the second trust deed. Plaintiff testified that she "agreed to that." Plaintiff signed a document, in Gluskin's office, whereby she engaged Superior to procure a loan to be secured by a third trust deed on her property. The document was "blank" when plaintiff signed it. Thereafter the blanks in the document were filled in by Gluskin, and then it bore the date December 11, 1953, and it provided that the loan to be procured would be for $1,400, with interest at 10 per cent per annum, payable $40 a month including interest, and that the balance of the loan would be paid within one year. The document, as so filled in, also provided that plaintiff would pay $400 to Superior, and that from said amount all escrow, title, appraisal, and recording fees should be paid. That document also provided that a premium for a life insurance policy on plaintiff's life had been included in the charges. Plaintiff also signed a third trust deed "in blank" in connection with the loan. Thereafter the blanks in the trust deed were filled in, and then the trust deed bore the date December 11, 1953, and recited that the amount of the note, secured by the trust deed, was $1,400. Insured Escrow Company was named as trustee in the trust deed, and Guaranty was named as beneficiary. (The

record does not contain a copy of the note secured by the trust deed. It appears from the trust deed that the note was payable to Guaranty.) Plaintiff testified that she received the proceeds from the loan in "dribs and drabs" from Gluskin, and she thought that the amount she received from the loan was $900. (Gluskin testified that plaintiff was the "beneficiary of $1,000 net to her," which might have been reduced by disbursements plaintiff was required to make to clear her title.) On December 18, 1953, Guaranty assigned the note, with recourse, to Herman Brown; and the trust deed was also assigned to him. Plaintiff testified that "way later" (after December 11, 1953) she received a payment book from Guaranty. The book showed that the amount of the note (which had been signed by plaintiff) was $1,400, that Brown was the holder of the note, and that payments on the note were to be made to Guaranty as collection agent for Brown. Brown is a resident of New York. Gluskin was Brown's agent and attorney at the time the loan was made to plaintiff. Brown had deposited $50,000 in a local bank to be invested in trust deeds. Daniel Fenton (son of Louis Fenton, who was secretary of Superior and president of Guaranty) was attorney in fact for Brown in trust deed transactions and he was authorized to withdraw funds from Brown's account in the local bank. Plaintiff testified that she received about $900 from the $1,400 loan. Gluskin testified that she received $1,000 therefrom. The difference between the principal amount of the note ($1,400) and the amount received by her was paid (according to Gluskin) as follows: "about $75 or $80" for escrow, title, and recording fees; $25 for appraisal; $48 (12 per cent of $400) to Guaranty; and the balance of such difference (about $300) to Superior. Gluskin testified that about $19.20 was paid by Guaranty for an insurance policy which provided that in the event of plaintiff's death the insurance company would pay the balance due on the loan.

About two months after December 11, 1953, at Gluskin's request, plaintiff consulted again with Gluskin. He advised plaintiff to consolidate all of her loans into one loan, and he told plaintiff that he would have to find someone with enough money to make such a loan. Plaintiff signed a document, in Gluskin's office, whereby she engaged Superior to procure a loan to be secured by a first trust deed on her home. The form of document was the same as the form of the document which plaintiff signed in connection with the first loan, and it

was "blank" when plaintiff signed it. Thereafter the blanks in the document were filled in, and then it bore the date March 29, 1954, and provided that the loan would be for $13,500, with interest at 10 per cent, payable $150 a month, and the balance would be paid within two years. The document, as so filled in, also provided that plaintiff would pay $1,000 to Superior. On March 29, 1954, an escrow, in which plaintiff was named as borrower and Guaranty as lender, was opened in the office of Intrastate Escrow Company, located at 9012 Wilshire Boulevard (next door to the address of Superior). Defendant Winthers, a former employee of Superior, was the president and only stockholder of the escrow company. Plaintiff signed blank forms of escrow instructions and a note and trust deed in the office of the escrow company. Thereafter the blanks in those documents were filled in, and then the terms of the note and trust deed were the same as the terms appearing in the "filled in" document which plaintiff had signed (in blank) when she applied for the loan. After the blanks in the escrow instructions had been filled in, the instructions provided that the escrow holder was authorized to deliver the note at such time as $13,500 had been deposited to plaintiff's account. The payee named in the note was Guaranty. The trustee named in the trust deed was Title Insurance and Trust Company, and the beneficiary was Guaranty. Plaintiff also signed a blank form of amendment of the escrow instructions. Thereafter the blank form of amendment was filled in so that it was dated March 29, 1954 (the same date which was on the instructions), and it authorized the escrow holder to pay to Superior, from funds accruing to plaintiff, $1,000 "for expenses and commission in connection with this loan" and to pay the amounts of the unpaid balances on the first, second, and third trust deed notes.

Prior to the close of the escrow, Superior advanced $250 to plaintiff.

On April 7, 1954, plaintiff signed another blank form of amendment of the escrow instructions. When the form was filled in, it authorized the escrow holder to repay to Superior the $250 which had been advanced to her.

On April 13, 1954, Guaranty assigned its interest "in and to the subject matter of the . . . escrow, WITH RECOURSE," to S. N. Sander. On the same date Sander approved the escrow instructions and agreed to be bound thereby, and he deposited $1,000 in the escrow. Guaranty assigned the note, with recourse, to Sander; and the trust deed was also assigned to him.

On April 14, 1954, Louis Fenton, as president of Guaranty (which was named as lender in the instructions), signed the original escrow instructions and the amendment which was dated March 29. Also on April 14 Daniel Fenton (attorney in fact for Brown) placed the $1,400 note and trust deed in the escrow, and demanded payment, in behalf of Brown, as follows: $1,372.45 principal; interest from February 1, 1954; and a pre-payment bonus of five per cent.

On April 28, 1954, Gluskin, on behalf of Superior, signed an amendment to the escrow instructions whereby the escrow company was authorized to deduct $61.19 from the "commission due" Superior, and to credit that amount to plaintiff in order that she might "receive net loan proceeds out of this escrow of $250.00 in addition to funds previously paid her outside of escrow." On May 4 the $13,500 trust deed was recorded. The escrow company disbursed the funds in the escrow as follows: Taxes and insurance, $158.12; payment of first and second trust deed notes, $10,408.13; Herman Brown, $1,474.22 (principal, $1,372.45, interest, $79.26, 90-day bonus, $68.76); escrow fees, $37.50; Superior, $922.01 (commission); Superior, $250 (refund of advance to plaintiff); plaintiff, $250. (Total of those amounts is $13,500.) Superior paid, outside of escrow, $77.10 for a title policy, and also paid $120 to Guaranty.

On the dates of the transactions with plaintiff, Superior and Guaranty were California corporations. The directors of Superior were Gluskin, Harry J. Calhoun and Robert M. Calhoun. The directors of Guaranty were Gluskin, Harry J. Calhoun and Louis Fenton. Gluskin was president of Superior. Harry J. Calhoun was treasurer of both corporations. Louis Fenton was secretary of Superior and he was president of Guaranty. Daniel Fenton, son of Louis Fenton, was secretary of Guaranty. Superior and Guaranty occupied offices at 9010 Wilshire Boulevard, and they had the same telephone numbers. Superior was a real estate broker and was engaged in the business of negotiating loans secured by trust deeds on real property. Guaranty was engaged in the business of collecting payments on loans Superior negotiated. Guaranty carried insurance, payable to it, on the lives of borrowers. The proceeds of the insurance policies were to be used to pay the loans in the event of the death or disability of the borrowers. No stock had been issued by Superior or by Guaranty.

Appellant contends that the motion for a nonsuit was insufficient in that it did not specify the grounds on which the

motion was made. At the conclusion of plaintiff's case, defendants' attorney stated: "I should like to move for a non-suit simply because I believe that taking the allegations of the complaint and taking the evidence presented, it would seem to me that a prima facie case substantiating inference, presumption or evidence, the allegations contained in such complaint has not been made out." The motion did not specify the grounds upon which the motion was made. The determination of this appeal need not be based on the fact that defendants did not specify the grounds upon which the motion for a nonsuit was made.

Appellant contends that the evidence was sufficient to support a judgment in her favor.

Article XX, section 22, of the Constitution of California (regarding rate of interest) prohibits the charging of "any fee, bonus, commission, discount or other compensation" whereby the lender will receive more than 10 per cent per annum for any loan of money. Section 2 of the Usury Law (Stats. 1919, p. lxxxiii, Deering's Gen. Laws, Act 3757) provides that any contract to pay interest of more than 12 per cent per annum on the loan of money shall be void as to any agreement to pay interest. Section 3 of the Usury Law provides that any person, who pays interest of more than 12 per cent per annum on a loan of money, may recover from the person or corporation who receives the same, or from his or its representative, treble the amount of interest paid in excess of 12 per cent per annum.

Plaintiff sought a loan of $1,000 from the Superior Mortgage Company. In applying for the loan she signed blank forms of a note and trust deed. Later when the blanks were filled in, it appeared that the amount of the loan was $1,400, with interest at 10 per cent per annum. The note was payable to Guaranty Corporation of America. As a result of that transaction, according to plaintiff's testimony, she received about $900. According to Gluskin's testimony, she received $1,000. Defendants assert that a commission of $400 was charged by Superior Mortgage Company for its services in obtaining the loan, and that expenses in connection with the loan were paid from the commission. The net amount allegedly received as commission was about $300.

After that loan had been made, she had three trust deed encumbrances on her home property. Gluskin, the president of Superior Mortgage Company, suggested that she consolidate the three loans into one loan. In proceeding to obtain

such a consolidation, she signed blank forms of a note and trust deed. Later, when the blanks were filled in, it appeared that the amount of the loan was $13,500, with interest at 10 per cent per annum. The note was payable to Guaranty Corporation of America. As a result of that transaction, the three encumbrances and the taxes on her home were paid, and she received $500 cash. Defendants assert that a commission of $1,000 was charged by Superior for its services in obtaining the loan, and that expenses in connection with the loan were paid from the commission. The net amount allegedly received as commission was $844.91. From that amount, $120 was paid to Guaranty.

At the times of said loan transactions, the Superior Mortgage Company, the alleged broker, and Guaranty Corporation of America, the payee of the notes, maintained offices at the same address and they had the same telephone numbers. It could be inferred from the evidence that they occupied the same offices. The directorates of the two corporations were interlocking. The principal officers of Superior were principal officers or were directors of Guaranty, and the principal officers of Guaranty were principal officers or were directors of Superior. Gluskin, one of the Fentons, and one of the Calhouns were officers or directors of Superior. Gluskin, both of the Fentons, and one of the Calhouns were officers or directors of Guaranty. No permit to issue stock was obtained by either corporation. Under the evidence a question was presented as to whether the corporations were in fact separate entities or whether there was such a unity of ownership of both corporations that individuality of the corporations did not exist and there was merely a fiction of separate existence. If, in fact, there was not separate existence of the corporations there would be no proper basis for a charge of commission by one of the corporations for its alleged services as a broker in allegedly obtaining a loan for plaintiff from the other corporation. A charge for commission under such circumstances would be, in effect, charging a commission when no service as a broker was rendered. A question of fact was presented herein as to whether the charges for commissions were bona fide charges for services as a broker in obtaining a loan from a third person. If the charges for commission were not bona fide commission charges, but were made under the guise of commission charges, it is apparent that when such charges for commission are added to interest at the rate of 10 per cent per annum, as provided in the notes, the total amount of inter-

est for the loans exceeds 12 per cent per annum and is usurious.

■ In *Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609 [254 P. 956, 255 P. 805, 53 A.L.R. 725], it was said, at page 616: "[I]n determining whether or not the transaction is usurious the court 'will disregard its form and look to the substance, and will condemn it if all of the requisites of usury are found to be present, despite any disguise it may wear.'" ■ It was also said in that case at page 617: "'As a general rule, any benefit or advantage exacted by the lender from the borrower, whatever be its name or form, which, added to the interest taken or reserved, would yield to the lender a greater profit upon his loan than is allowed by law is deemed usury.'"

Respondents assert in effect that the $1,400 loan was made by Brown; that the $13,500 loan was made by Sander; and that Guaranty was the "conduit" through which the loans were made. It is clear that both notes were payable to Guaranty, and Guaranty was named as beneficiary under both trust deeds. One note and a trust deed were assigned by Guaranty to Brown; and the other note and trust deed were assigned to Sander.

■ In the present case there was a question of fact as to whether the loan transactions were usurious. The motion for a nonsuit should not have been granted.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.