[Civ. No. 25144.   Second Dist., Div. Four.   Nov. 14, 1961.]

THERESA WHEELER, Respondent, v. SUPERIOR MORT-GAGE COMPANY (a Corporation) et al., Appellants.

White and Wulliger and Milton N. White for Appellants.

Herbert Colden for Respondent.

BALTHIS, J.—This is an appeal from a judgment awarding plaintiff treble the amount of interest found by the court to have been paid by plaintiff to defendants in two loan transactions, and also found by the court to have been usurious.

The judgment in favor of plaintiff is against two corporate defendants, Superior Mortgage Co. (hereafter called Superior), and Guaranty Corporation of America (hereafter called Guaranty), and two individual defendants, Robert M. Calhoun and Harry J. Calhoun. All of these defendants appeal from the judgment.

Defendants first contend that they were not the real lenders and a judgment based upon usury is erroneous. Another contention is that even if one of the defendants, Guaranty, was the lender a judgment against the other defendants on the basis of usury is improper. Thus the question of the applicability of the *alter ego* doctrine, as between the two corporate defendants and also as to the individual defendants, is raised. A third contention is that no interest was actually paid by the plaintiff as to the loan transaction which resulted in a trustee's sale of the property held as security; therefore the court was in error in holding that the amount bid at the trustee's sale by Guaranty, which included an amount for interest on the loan, was the equivalent of payment of interest. The third issue presents the question as to what constitutes a payment of interest to justify a treble damage recovery under the Usury Law.

On a previous trial, a judgment of nonsuit against plaintiff was granted but on appeal was reversed. (*Wheeler* v. *Superior Mortgage Co.* (1958), 160 Cal.App.2d 246 [325 P.2d 156].)

Construing the evidence most favorably for the plaintiff, the relevant facts are as follows: In December of 1953 plain-

tiff went to the offices of Superior for the purpose of negotiating a loan to be secured by her property in Hollywood, California. The property was at that time encumbered by first and second trust deeds securing sums previously borrowed by plaintiff from persons other than defendants. H. John Gluskin, president of Superior, with whom plaintiff consulted, stated that Superior would lend plaintiff $1,000 to be secured by a third trust deed on the property. Plaintiff then signed loan escrow instructions, a promissory note and trust deed. These documents were all in blank, both as to the amount of the loan and the parties thereto, and did not at that time contain any agreement for the plaintiff to pay a loan commission to anyone.

Plaintiff was paid $1,000. Subsequently, a payment book was mailed to her which provided for the repayment of $1,400, plus interest at the rate of 10 per cent per annum, to be made in monthly installments of $40 for a period of one year, after which time the entire balance became due. Plaintiff did not notice the fact that the amount of the loan as set forth in the payment book was $400 greater than that which she had bargained for until March of 1954, when she was about to make her second payment. At that time she called Gluskin on the telephone and pointed out the discrepancy to him. Gluskin stated that the $1,400 figure was a mistake and asked plaintiff to call at his office the next day. At the office, Gluskin repeated that he had made a mistake and stated it could be remedied by plaintiff consolidating her indebtedness on the property (the three notes secured by trust deeds) into a larger loan. Plaintiff agreed to this plan and the parties then had an understanding whereby Superior was to lend plaintiff $12,500. Papers were drawn up as in the first transaction and again plaintiff executed them in blank. When filled in, the promissory note and deed of trust were made out in the principal amount of $13,500.

In an escrow transaction, the prior loans were paid off with the proceeds of this larger loan and plaintiff received $250 in cash. Plaintiff made no payments on this second, or larger, loan and after a period of approximately one year Guaranty commenced proceedings to sell the property under the power of sale contained in the trust deed.

Plaintiff thereupon instituted legal proceedings to enjoin the sale and for other relief, alleging that the loan was usurious, and the parties entered into a written stipulation that the property would not be sold until the legal proceedings

had been determined. Plaintiff was nonsuited but, as indicated previously, such judgment was reversed on appeal. In the meantime, however, the property was sold at the trustee's sale and was purchased by the defendant Guaranty.

In both transactions plaintiff signed agreements making Superior her broker for the purpose of obtaining the two loans. The loan escrow instructions named Guaranty as the lender. Furthermore, the instruments named Guaranty as the payee of the notes and as beneficiary in the trust deeds.

Defendants rely upon evidence which indicates that in both transactions the loan escrows were kept open until money was deposited therein by persons other than the four defendants here involved. In the first loan transaction the amount of $1,400 was deposited by or in behalf of one Herman Brown and in the second transaction $13,500 was deposited by S. N. Sander. In the transactions certain sums ($400 in the first and $1,000 in the second) were paid to Superior as purported broker's commissions, from which sums Superior paid the escrow expenses. Superior also remitted a portion thereof to Guaranty, which purported to cover an insurance premium on the life of the borrower, and in which insurance arrangement Guaranty was named as beneficiary.

At the close of the escrows, the promissory notes secured by the trust deeds were assigned by Guaranty, in the one case to Brown and in the other to Sander, "with recourse." Upon plaintiff's failure to make payments on account of the second loan, Guaranty itself remitted amounts equivalent to payments to Sander for a period of one year. At the end of that period Guaranty took the note and the trust deed back from Sander and commenced proceedings to sell the property under the power of sale contained therein. Guaranty was the purchaser at the trustee's sale for the amount of $17,779.58, which amount was credited to payment of plaintiff's debt, including principal, interest and trustee's expenses.

It further appears from the evidence that Herman Brown, the purchaser of the $1,400 note, was an investor with Superior at the time; that Daniel Fenton executed the assignment to Brown as the latter's attorney; that Daniel Fenton was the son of Louis Fenton, president of Guaranty; that Daniel Fenton was also the secretary of Guaranty and the accountant for both corporations; that Gluskin acted as Brown's agent in assigning the note and trust deed to Brown, and that $1,400 was withdrawn from Brown's account and deposited into the loan escrow by Daniel Fenton.

As to the relationship of Sander to Guaranty, it appeared from the evidence that Sander was unrelated to any of the other defendants in any fiduciary or business capacity and that he entered the second loan escrow in response to an investment circular which was an offer by Superior of a "$13,500, 10%, first trust deed pays $150 per month." It further appears from Sander's testimony that he was confused as to the distinct identities of Guaranty and Superior and used the names of the two corporations interchangeably, and also that he *bought* the note and trust deed from Guaranty.

On the issue of the relationship of the parties, that is, as to the two corporate defendants and the two individual defendants, the evidence showed that Gluskin was the president of Superior and a director of both corporations; that Louis Fenton was president and a director of Guaranty and secretary of Superior; that Harry J. Calhoun was the treasurer and a director of both corporations; that Robert M. Calhoun, a brother of Harry J. Calhoun, was chairman of the board of Superior; that Harry J. Calhoun was the sole stockholder in Guaranty; that Robert M. Calhoun advanced the funds to commence the business of Superior and that he had advanced nearly $85,000 in loans to Superior; that Guaranty was capitalized for $30, consisting of three shares of corporate stock, $10 per share, issued December 28, 1955, in the name of Harry J. Calhoun; that Superior was capitalized in the sum of $12,500, the stock being issued December 28, 1955, in the name of Robert M. Calhoun; that Robert M. Calhoun owned the property where both corporations did business but never collected any rent for this use of the property; that both Guaranty and Superior did business in the same building, at the same location and used the same telephone number; that there was no identification upon the offices used by Superior to distinguish them from Guaranty's offices.

The trial court found that Superior and Guaranty were conduits, one for the other, for the purpose of conducting a lending business of the Calhouns; that both corporations were under the control of these individuals and that the two transactions involved here were part of a plan to evade the California usury laws, and article XX, section 22, of the Constitution of the State of California; that both corporations were *alter egos*, each for the other, and also for the individual defendants; that the loans actually agreed upon by the parties were for $1,000 and $12,500 respectively; that Superior as the *alter*

*ego* of the lender induced plaintiff to execute the loan instruments in blank and subsequently filled in the blanks to provide for the payment of usurious rates of interest by plaintiff; that as to the first transaction involving the execution of a note and trust deed for $1,400, the sum of $1,000 was the actual amount of principal; that of the $400 fee charged, the net commission was $295, and the sum of $105 covered escrow expense and other charges, and that the total interest paid on said first transaction, including the net bonus or commission, was $386.71; that in connection with the second loan transaction the actual principal amount of the loan was $12,500, and that of the $1,000 fee charged, the net commission was $846.71, and the balance of $153.29 represented escrow expense and other charges; that on the trustee's sale under the trust deed, Guaranty bid and purchased the property for the sum of $17,779.58; that of said total amount the sum of $2,831.25 represented interest (as such) paid on the second loan and that this amount, together with the bonus or commission of $846.71, makes the total interest paid on the second loan the sum of $3,677.96; that the total interest paid on both loans and upon which plaintiff was entitled to treble recovery was the amount of $4,064.67; and that this last amount trebled is $12,194.01, being the amount of the judgment.

The Usury Act (Deering's Gen. Laws, 1954, Act 3757), adopted as an initiative measure in 1918, as modified by the effect of the later constitutional amendment (art. XX, § 22, added November 6, 1934), provides for a 10 per cent per annum rate as the maximum permissible interest (except as to certain classes such as credit unions and pawnbrokers). Section 3 of the Usury Act provides for a treble interest recovery where the amount of interest paid is in excess of the maximum permissible. (*Heald* v. *Friis-Hansen,* 52 Cal.2d 834, 839 [345 P.2d 457]; *Thomas* v. *Hunt Mfg. Corp.,* 42 Cal.2d 734 [269 P.2d 12]; *Shirley* v. *Britt,* 152 Cal.App.2d 666 [313 P.2d 875].)

The two loans here were clearly usurious in that they provided for a 10 per cent per annum interest rate (the maximum permissible) and, in addition, the borrower paid a substantial bonus or commission. Under the constitutional provision the prohibition against charging of interest rates above the permissive maximum includes any fee, bonus, commission, discount or other compensation received upon the loan of money. It has been held that a commission charged upon the making of a loan is the equivalent of the payment

of interest. (*Otis* v. *I. Eisner Co.*, 7 Cal.App.2d 496, 499-500 [46 P.2d 235]; *Devers* v. *Greenwood*, 139 Cal.App.2d 345, 351 [293 P.2d 834].)

The commissions paid here, in addition to the maximum interest rate, make the loans usurious without question. Furthermore, the loans being usurious and more than the maximum permissible interest having been paid, the treble interest provision of the Usury Act is applicable. (*Heald* v. *Friis-Hansen*, 52 Cal.2d 834, 839 [345 P.2d 457].)

If Guaranty is the lender, the judgment for treble damages for usurious interest paid is correct, and if the court's findings on the *alter ego* doctrine are supported, the other defendants are likewise liable.

The trial court found that the two loans were made by the defendants (Guaranty, Superior and the two Calhouns) with the intent to collect usurious interest. ▮▮▮ It is a question of fact as to whether a particular transaction is or is not usurious. (*Janisse* v. *Winston Investment Co.* (1957), 154 Cal.App.2d 580, 582 [317 P.2d 48, 67 A.L.R.2d 225].)

▮▮▮ In the instant case, the evidence and the reasonable inferences therefrom overwhelmingly support the findings. The plaintiff went to the office of Superior (which was also the office of Guaranty) to obtain the loan and she dealt personally with no one else. Mr. Gluskin, an officer of Superior and a director of Guaranty, assured her that she could obtain the loan. She had no dealings with either Mr. Brown, who purchased the note and trust deed in the first loan transaction, or Mr. Sander, who purchased the note and trust deed in the second transaction. All of the papers here involved, the promissory note, the deed of trust and the escrow instructions, provide that Guaranty is the lender. The designation of the lender was the act of the defendants and their officers because plaintiff had signed the loan instructions in blank. Defendants are not now in a position to contradict their own acts and to claim that parties other than those named throughout the instruments were the lenders. ▮▮▮ Any ambiguity involved in the loan transactions, and in the determination of who the lender was, is to be construed against the party responsible therefor. (*Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 739 [269 P.2d 12].)

▮▮▮ In the second loan transaction with plaintiff, wherein all three trust deed obligations were replaced by the larger loan, the note and trust deed were assigned by Guaranty to Sander. Sander in his testimony referred to his *purchase* of

the note and trust deed. He considered himself as an investor or purchaser, not a lender. As previously pointed out, plaintiff had no dealings or negotiations with Sander.

Furthermore, the assignment made by Guaranty to Sander was made "with recourse." When no payments were made by plaintiff to Sander, Guaranty made the equivalent of such payments to Sander and then eventually took a reassignment of the note and trust deed. These facts do not clothe the transaction with the appearance of a loan by Sander to the plaintiff, particularly where there was no contact between these parties.

Likewise, in the first transaction Brown was a purchaser, not a lender.

Defendants' contention that they were not the lenders, that Brown and Sander were, is neither tenable nor supported by the evidence.

In view of the finding, strongly supported by the evidence, that the corporations were not separate entities, the fact that the commissions were split as between the two corporations as a matter of accounting is not important or material because in fact there was only one lender and the lender received the full net commission as to each loan. (See the discussion of the two corporations acting as one in the prior case, *Wheeler* v. *Superior Mortgage Co.* (1958), 160 Cal.App.2d 246, 254 [325 P.2d 156].)

In this case, the findings, which are supported by the evidence, establish that the two corporations were used for the very purpose of making usurious loans, with one corporation (Superior) taking a brokerage fee or commission, and the other corporation (Guaranty) nominally and in form only, making the loan. This in itself would indicate bad faith and the plea of separate entities cannot be accepted.

The general rule is that the failure to issue stock may be considered as a factor in determining the question whether the corporate veil should be pierced and whether the individual should be held liable. (*Automotriz etc. De California* v. *Resnick*, 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042]; *Marr* v. *Postal Union Life Ins. Co.*, 40 Cal.App.2d 673 [105 P.2d 649].)

The court may also consider that the corporate entity or entities are not adequately capitalized. If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate

entity privilege. (*Automotriz etc. De California* v. *Resnick,* 47 Cal.2d 792 [306 P.2d 1, 63 A.L.R.2d 1042].)

In the case before us the evidence established that at the time the loan transactions were had with plaintiff, neither corporation had any capitalization whatsoever.

In *H.A.S. Loan Service, Inc.* v. *McColgan,* 21 Cal.2d 518 [133 P.2d 391, 145 A.L.R. 349], the court held that it was proper to consider two corporations the same as one. The lower court had found that the two corporations were controlled by the same persons; that the majority of the stock of each was owned by the same persons or their families, and that the two corporations were formed and utilized to conduct a small loan business in a manner which was a subterfuge to avoid the usury laws, as well as the Franchise Tax law. The court stated at pages 523-524: ''Under the circumstances here presented the two corporate entities were in fact one, or if they be considered separate, two, in effect, engaged in a single business. The corporate entity may be disregarded when it is used to evade the law.''

The final contention of defendants is that there must be an actual payment of interest in order to justify the application of the treble damage provision of the Usury Act and that in this case, particularly as to the second loan transaction, plaintiff herself actually paid no interest, except as it can be deemed to have been paid through the satisfaction of the debt, including interest, by the trustee's sale of the property. At the trustee's sale defendant Guaranty bid for the property and the total amount bid was $17,779.58. This amount bid by the beneficiary or creditor was not a cash bid, but was the total amount which defendant Guaranty claimed was due it under the note and trust deed. The amount bid therefore included the full sum of principal and interest in accordance with the terms of the note. We have already noted that this included the full amount of the usurious interest, or $3,677.96 (interest at 10 per cent and commission). Defendants take the position that including this amount in the bid does not constitute the equivalent of the payment of interest in order to justify a treble interest recovery.

It appears that this same point was passed upon in *Penziner* v. *West American Finance Co.* (1933) 133 Cal.App. 578 [24 P.2d 501]. That case was decided after demurrer had been sustained and judgment rendered for defendant. Plaintiff had alleged in one of the counts that usurious interest had been paid since the bid made at the sale included the usurious

832

interest due on the debt. These facts were held to be sufficient to constitute a cause of action to recover usurious interest. (See also *Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160 [74 P.2d 252].)

We believe that the use of the interest due on the loan by the lender-bidder at the sale constitutes the equivalent of the payment of the interest. by the borrower. Obviously, when this amount is bid, and it includes the usurious interest, it prevents any lower bid from being successful. The lender is actually using the amount of the usurious interest to obtain the property and, if successful, he has in effect collected the interest as the debt, including interest, is thereby fully satisfied.

The judgment of the trial court is affirmed.

Burke, P. J., and Jefferson, J., concurred.