[Civ. No. 1093. Fifth Dist. June 16, 1970.]

STANLEY HARRIS et al., Plaintiffs and Appellants, v.
E. S. CURTIS et al., Defendants and Respondents.

**COUNSEL**

Sherman Rogers for Plaintiffs and Appellants.

Clawson & Jennings and Lawrence W. Clawson for Defendants and Respondents.

**OPINION**

**COAKLEY, J.**—This action by appellants is against the Tagus Ranch Motel Corporation and others for $14,500 allegedly due appellants for sums advanced to the corporation. Respondents, who were among but not all of the directors and shareholders of the corporation, were sued for the same amount in their individual capacities. In a separate cause of action, the complaint alleges that the respondents dominated and controlled the corporation and that the corporation is a mere shell and naked framework which respondents have used for the conduct of their personal affairs. It alleges, in effect, that the respondents were the *alter ego* of the corporation, and that the corporation has been fraudulently used by respondents to the detriment of the corporation's creditors, including appellants. Following trial to the court, judgment was entered in favor of plaintiff-appellant Sharon Harris and against the corporation in the amount of $10,000, and in favor of plaintiff-appellant Stanley Harris and against the corporation for $4,920.16. Judgment was entered in favor of the individual respondents against the appellants. It is from the portion of the judgment in favor of the individual respondents that this appeal is taken.

The corporation was organized with E. S. Curtis as the primary figure. An application for a permit to issue 1,000 shares of stock at $1 per share

was filed and granted. Shares were authorized to be issued to, and were issued and fully paid for as follows:

| | |
|---|---|
| Mr. and Mrs. Curtis | 730 shares |
| Mr. and Mrs. Maccagno | 150 shares |
| Mr. and Mrs. Levi | 100 shares |
| Mr. and Mrs. Twitchell | 20 shares |

The Curtises later transferred 150 shares to their daughter and son-in-law. Of the $1,000 of paid in capital, $811.12 was used for the expenses of incorporation. Directors were elected and Curtis was chosen as president and chairman of the board.

The corporation was organized for the purpose of owning and operating motels and engaging in related businesses. Pursuant thereto the corporation acquired six acres of land on Highway 99 near Tulare and constructed a 60-unit motel thereon. It also acquired a restaurant located on adjoining property. The restaurant had been in business at that location for many years and was operated in connection with a bar-cocktail lounge, coffee shop, and gift shop. The corporation obtained the right to use the name "Tagus Ranch," the name under which the restaurant and large ranch property surrounding the restaurant and motel site had long been operated. During negotiations for the purchase of the land and restaurant, Curtis and Maccagno made loans to the corporation which were later repaid. In addition, the corporation obtained a construction loan of $260,000 from the Fresno Guarantee Savings & Loan Association, and a $75,000 loan from General Electric Credit Corporation with which to purchase furnishings for the motel. Upon completion of construction, an $80,000 loan was obtained from the Bank of America. This money was used to repay the earlier loans made by shareholders to the corporation. It is important to note that this bank loan was personally guaranteed by some of the shareholders, and that it was paid off by them when the corporation defaulted, Curtis repaying $60,000, Maccagno $12,000, and Levi $8,000. Various shareholders rendered personal services in the operation of the business without compensation. Mr. Curtis devoted some of his time to organizing the corporation, overseeing construction, and managing and operating the motel as resident manager. For such services he received one payment of $1,000.

The motel commenced operation in the fall of 1962. In the late summer of 1963, appellants became interested in buying the motel and restaurant and entered into negotiations with the respondents for that purpose. As of September 30, 1963, immediately before appellants took an option to buy

the stock of the corporation and to loan the corporation $19,000, the corporation's books reflected the following condition:[1]

Assets $393,000, Liabilities $455,000, for a net book loss of $62,000. The restaurant and related departments showed gross sales of $215,000 and a net profit of $9,300 for the eight-month period, February 1-September 30, 1963. The motel occupancy rate had risen steadily since the motel opened, and for September 1963 the occupancy rate was close to 60 percent.

The substance of other relevant facts are stated or indicated in the trial court's finding No. 4 which follows: "That the individual defendants E. S. Curtis, Mary E. Curtis, Myron B. Levi, Marjorie B. Levi and Louis C. Maccagno are not indebted to plaintiffs in any sum and said defendants were not at any of the times mentioned in the evidence the alter-ego of the defendant corporation Tagus Ranch Motel Corporation; that the corporate entity of the defendant Tagus Ranch Motel Corporation should not be disregarded in that there was no co-mingling of funds and assets; there was no failure to segregate funds of the entity and the individuals; there did not appear to be any unauthorized diversion of corporate funds or funds to other than corporate uses; the $1,000.00 paid by said corporation to defendant E. S. Curtis was for services rendered and was earned by him; no individual shareholder treated the assets of the corporation as his own; stock had been issued to the individual stockholders pursuant to a Permit; at no time did any individual shareholder holdout to plaintiffs that he, they or anyone else would be personally liable for the corporate debts; adequate corporate records and minutes were kept by the defendant Tagus Ranch Motel Corporation; there was no confusion of the corporate records with those of any of the individual shareholders; there was no sole ownership of all the stock of the corporation by one individual or the members of a family; the defendants E. S. Curtis, Louis C. Maccagno and Myron Levi being strangers in blood and each having their own separate businesses; none of the individual shareholders or officers of the corporation maintained same offices or business location with the corporation; employees of the individual shareholders are not employees of the corporation, nor was their [sic] any indication that their attorneys were the same; the corporation was not used as a mere shell for a single venture or business of an individual or another corporation; there was no indication of any disregard of legal formalities or a failure to maintain arms length relationship between the corporate entity and any of the individuals; there was no indication of any use of the corporation to procure labor, services or merchandise for any person or entity; there was no diversion of assets by or to a stockholder or other person to the detriment of creditors; all of the assets of said defendant

---

[1]Figures rounded.

corporation belonging to said corporation and not to the individual share-holders to wit: liquor license, lease, buildings, equipment, etc.; there was no manipulation of assets and liabilities so as to concentrate assets in the individuals and the liabilities in the corporation; there was nothing to indicate there was any contract with another with the intent to avoid performance as a shield against personal liability; the corporation was not used as a subterfuge of illegal transactions; the corporation was not formed for the purpose of transferring to it any existing liability of another person or entity; a permit was received from the Corporation Commissioner for authority to option the stock in connection with the agreements with plaintiffs; the evidence did not show that the corporation was under capitalized to the extent that the corporate entity should be disregarded and that the factors in favor of recognizing the corporate entity of the defendant Tagus Ranch Motel Corporation far outweigh the sole factor of the alleged undercapitalization of said corporation; that plaintiffs knew they were dealing with the defendant Tagus Ranch Motel Corporation as a corporation so far as lending money to or on its behalf. . . ."

■ The evidence in support of the findings is substantial. Accordingly, under well-established rules, we must affirm in the absence of other error requiring reversal (*Primm* v. *Primm*, 46 Cal.2d 690 [299 P.2d 231]; *Estate of Jamison*, 41 Cal.2d 1, 13 [256 P.2d 984]; *Associated Vendors, Inc.* v. *Oakland Meat Co.*, 210 Cal.App.2d 825, 835 [26 Cal.Rptr. 806]).
■ In our opinion, the allegations of fraud, misconduct and overreaching are wholly unsupported and without merit.

In the light of the findings there is but one issue on this appeal. It is stated by appellants in these words: "The principal question is whether or not lack of capital contribution to the corporation is sufficient to make the individual shareholders liable," i.e. to pierce the corporate veil.[2]

There is no question that the corporation was underfinanced, a condition not uncommon among new small businesses, including small corporations privately financed. It is common knowledge that many such corporations have been highly successful, that others have prospered but without legendary success, and that still others have failed in part, at least, because of inadequate capital. Such is the story of our American enterprise system.

Appellants would have us declare that, per se, inadequate capitalization renders the shareholders, officers and directors liable for the obligations of the corporation. They cite no case so holding, and we know of none.

---

[2]There was in fact $1,000 of cash capital plus $80,000 of credit personally guaranteed by shareholders. Further, the court did not find undercapitalization sufficient to pierce the corporate veil.

The appellants cite the following cases as supporting their contention that the respondents are the *alter ego* of the corporation: (*Automotriz etc. De California* v. *Resnick,* 47 Cal.2d 792 [306 P.2d 1, 63 A.L.R.2d 1042]; *Wheeler* v. *Superior Mortgage Co.,* 196 Cal.App.2d 822 [17 Cal.Rptr. 291]; *Claremont Press Publishing Co.* v. *Barksdale,* 187 Cal.App.2d 813 [10 Cal.Rptr. 214]; *Platt* v. *Billingsley,* 234 Cal.App.2d 577 [44 Cal.Rptr. 476]; and *Temple* v. *Bodega Bay Fisheries, Inc.,* 180 Cal.App.2d 279 [4 Cal.Rptr. 300]). We do not interpret those cases as providing support for the appellants' position.

Unlike our case, in *Automotriz, supra,* no application for a permit to issue stock was ever made, and, of course, no permit was ever issued. The plaintiff made it plain to the defendants that it would extend credit only upon the condition that the defendant Cowan was " 'going into business' and would be 'backing the business up.' " In our case, an application for a permit to issue stock was made and a permit was granted in July 1962, as requested. Additionally, there were no personal assurances made by respondents to appellants. *Automotriz* is clearly distinguishable.

*Wheeler* v. *Superior Mortgage Co., supra,* 196 Cal.App.2d 822, does not hold that where there is undercapitalization the corporate entity must be pierced. What the court said on that subject in *Wheeler* follows: "The court *may* also consider that the corporate entity or entities are not adequately capitalized. If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is *a* ground for denying the separate entity privilege. [Citing *Automotriz, supra,* italics added.]" There, i.e., in *Wheeler,* the trial court found that the individuals were the *alter ego* of the corporations. On appeal, the court concurred, holding that ". . . the evidence and the reasonable inferences therefrom overwhelmingly support the findings."

Here, the trial court correctly found against the appellants with respect to all of the factors urged by them as establishing that respondents were the *alter ego* of the corporation.

*Claremont Press Publishing Co.* v. *Barksdale, supra,* 187 Cal.App.2d 813, and *Platt* v. *Billingsley, supra,* 234 Cal.App.2d 577, are likewise distinguishable. In the *Claremont* case the application for a permit to issue stock was abandoned and no permit was ever issued. The court held that this was one of the factors to consider in determining whether to pierce the corporate veil. In *Platt, supra,* the court said that undercapitalization was one of the most significant factors to be considered. But it also said that, "the doctrine [of *alter ego*] is essentially one of equity which rests largely upon the facts peculiar to each case." (P. 586.)

In *Temple* v. *Bodega Bay Fisheries, Inc., supra,* 180 Cal.App.2d 279, one-half of the stock was not paid for and the other one-half was issued, in part, for money expended prior to organization of the corporation. *Temple* cited *Automotriz* to the effect that undercapitalization is but one of the factors to be considered.

The court in *Carlesimo* v. *Schwebel,* 87 Cal.App.2d 482 [197 P.2d 167], held that the *alter ego* doctrine was not applicable under the facts. There the application was for $1,000 worth of stock, the permit was issued for that amount, and $1,000 was paid to the corporation for its shares. The court declined to hold that the corporation was undercapitalized. It further found, as in our case, that no deception was practiced upon the plaintiff. There, as here, the appellant was not led to believe that he was dealing with the officers and shareholders as individuals as distinguished from dealing with the corporation.

We, therefore, apply the rule enunciated in each of the cases cited, *supra,* viz., that undercapitalization is a "factor" to be considered, *along with all other factors present in the case,* in determining whether individuals identified with an undercapitalized corporation as shareholders, directors, or officers, should be declared the *alter ego* of the corporation and held personally responsible for the corporate obligations. Upon doing so we conclude, as did the trial court, that the respondents in this case were not the *alter ego* of the corporation.

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 12, 1970.