Hillsborough-northern judicial district
No. 2002-726

THE NORWOOD GROUP, INC. *& a.*

v.

ROSE MARIE PHILLIPS *& a.*

Argued: June 12, 2003
Opinion Issued: July 24, 2003

*Wenger & Cronin, P.C.,* of Manchester (*John F. Bisson* and *John G. Cronin* on the brief, and *Mr. Cronin* orally) for the plaintiffs.

*Devine, Millimet & Branch, P.A.,* of Manchester (*Alexander J. Walker, Jr.* and *Donald L. Smith* on the brief, and *Mr. Walker* orally), for the defendants.

BROCK, C.J. The plaintiffs, The Norwood Group, Inc. (Norwood Group) and Barbara Bielagus, appeal from the order of the Superior Court (*Conboy,* J.) dismissing their petition for equitable and legal relief brought against the defendants, Rose Marie and Robert Phillips. We affirm in part, reverse in part and remand.

The record supports the following facts. The defendants are the sole shareholders, officers and directors of Norwood Realty, Inc. (Norwood Realty). The plaintiffs are the current holders of a $1 million promissory note that Norwood Realty and Norwood Group executed in February 1986. As of February 1992, the principal balance due on the note was $530,000.44. *See Slattery v. Norwood Realty,* 145 N.H. 447, 448 (2000). The plaintiffs have been unable to collect the judgment from Norwood Realty.

To date, there have been three actions to collect on the note. The first was brought in 1995 against Norwood Realty by Bielagus and Arthur Slattery (a former holder of the note). *See id.* at 447. The jury in that case awarded Bielagus and Slattery the principal balance due on the note; we affirmed the jury verdict on appeal. *See id.* at 447-48.

The second action was brought by the plaintiffs in March 1998 against Eastern Massachusetts Real Estate, Inc. (EMRE) and Granite Commercial Group, Inc. (Granite), two successor companies to Norwood Realty. *See Bielagus v. EMRE of NH Corp.*, 149 N.H. 635 (2003). The superior court found that neither EMRE nor Granite was liable for Norwood Realty's obligations under the note. *See id.* The plaintiffs appealed this judgment; we recently affirmed the trial court's decision. *See id.*

The instant appeal concerns the third action to collect on the note. In this action brought in April 2002, the plaintiffs allege that the defendants are liable in their individual capacities for the amount due under the note. They further allege that in March 1995, the defendants structured a sale of substantially all of Norwood Realty's assets, "leaving behind an empty corporate shell" that is unable to satisfy the note.

The plaintiffs' petition includes a petition in equity to pierce the corporate veil of Norwood Realty, three negligence counts, and claims for fraud and fraudulent transfer. The defendants moved to dismiss the petition on the ground that all claims are barred by the applicable statute of limitations because they are based upon the March 1995 asset sale. The trial court treated the defendants' motion as a motion for summary judgment and granted it. The trial court found that the plaintiffs became aware of the asset sale through discovery responses in the first litigation. Although the plaintiffs argued that their petition to pierce the corporate veil is subject to a twenty-year, not a three-year, statute of limitations, the court impliedly ruled otherwise.

Additionally, the court ruled that the plaintiffs' claims for negligence and fraud failed to state a claim upon which relief could be granted. The only issues now before us relate to the plaintiffs' equitable petition to pierce the corporate veil and their fraudulent transfer claim.

We will affirm a trial court's grant of summary judgment if, considering the evidence and all inferences properly drawn therefrom in the light most favorable to the non-moving party, our review of that evidence discloses no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Coyle v. Battles*, 147 N.H. 98, 100 (2001). We review the trial court's application of the law to the facts *de novo. Id.*

*I. Equitable Petition to Pierce Corporate Veil*

Ordinarily, corporate owners are not liable for a corporation's debts. *See* 18A AM. JUR. 2D *Corporations* § 850 (1985). The corporation and its owners are considered separate legal entities. *See* 18 Am. Jur. 2d *Corporations* § 43 (1985). In an appropriate case, however, a corporation and those owning all of its stock and assets will be treated as identical. *Id.* Thus, for instance, we will pierce the corporate veil and assess individual liability where the owners have used the corporate identity to promote an injustice or fraud on the plaintiffs, as is alleged here. *See Terren v. Butler*, 134 N.H. 635, 639-41 (1991). In such a case, we will disregard the fiction that the corporation is independent of its stockholders and treat the stockholders as the corporation's "alter egos." *See Village Press v. Stephen Edward Co.*, 120 N.H. 469, 471-72 (1980).

The defendants argue that the plaintiffs' petition to pierce the corporate veil is a personal action governed by a three-year statute of limitations. *See* RSA 508:4, I (1997). The plaintiffs counter that it is an action to enforce the judgment entered in the first litigation against Norwood Realty, and is thus governed by a twenty-year statute of limitations. *See* RSA 508:5 (1997).

This is an issue of first impression in New Hampshire. Courts in other jurisdictions, however, have ruled that where, as here, a party first obtains a judgment against a corporation and later sues corporate stockholders to cast them in judgment under the doctrine of piercing the corporate veil, the suit against the stockholders is an action on a judgment.

For instance, in *Belleville v. Hanby*, 394 N.W.2d 412 (Mich. Ct. App. 1986), the court ruled that the ten-year period of limitation for enforcement of judgments applied to an action brought by judgment creditors of the corporation against individual stockholders under an alter ego theory. The plaintiffs in *Belleville* had filed a suit against the corporation in 1980 that arose out of a 1977 injury and had obtained a judgment in their favor. *Id.* at 413. The corporation filed for bankruptcy in 1983. *Id.* Soon thereafter, the plaintiffs sued the individual corporate shareholders, seeking to make them liable for the judgment in the earlier suit. *Id.* The defendants argued that the second suit was untimely because it was not filed within three years of the injury. *Id.* at 413-14.

The court ruled that the second suit was not a claim for personal injury, but rather was an attempt to establish that the judgment against the corporation was a judgment against the defendants in their individual capacities under the piercing the corporate veil or alter ego doctrine. *Id.* at 414-15. Accordingly, the court ruled that the ten-year statute of limitations for actions founded upon judgments governed. *Id.*

A similar conclusion was reached in *Wm. Passalacqua Builders v. Resnick Developers South*, 608 F. Supp. 1261 (S.D.N.Y. 1985), *reversed on other grounds*, 933 F.2d 131 (2d Cir. 1991). In that case, the plaintiffs had obtained a judgment against Resnick Developers South, Inc. (Developers) in 1981. *Id.* at 1263. They later sued Developers and other defendants to collect the unpaid balance on the judgment. *Id.* The plaintiffs alleged that the other defendants were liable for the balance under a theory of piercing the corporate veil. *Id.*

The defendants argued that the plaintiffs' claims were governed by the six-year statute of limitations for fraud. *Id.* at 1264. The court disagreed, ruling that the plaintiffs' claims against the corporate and other defendants were governed by the twenty-year limitation period for actions to enforce a judgment. *Id.* The court reasoned that because under the alter ego theory, the corporation and those that controlled it are treated as a single entity, the statute of limitations applicable to the corporation should apply to the corporation's alter egos. *Id.*

We find the reasoning of these cases persuasive and hold that the plaintiffs' equitable petition to pierce the corporate veil is governed by the twenty-year statute of limitations for actions to enforce a judgment. It is therefore timely.

The defendants argue that public policy considerations mandate that the plaintiffs' petition to pierce the corporate veil be subject to a three-year, and not a twenty-year, statute of limitations period. We disagree. Equitable considerations compel us to apply the twenty-year limitations period. *See Matthews Const. Co., Inc. v. Rosen*, 796 S.W.2d 692, 694 (Tex. 1990). If we were to apply the three-year limitations period to the plaintiffs' claim, assuming without deciding that piercing the corporate veil is warranted, we would effectively have permitted the defendants to use the corporate entity as a "cloak for fraud." *Id.* (quotation omitted).

For the first time on appeal, the defendants argue that applying the twenty-year statute of limitations to the plaintiffs' petition to pierce the corporate veil violates their constitutional right to equal protection under the New Hampshire Constitution. They assert that by applying the twenty-year statute of limitations to a petition to pierce the corporate veil, corporate shareholders are treated differently than other defendants. This argument is plainly without merit and warrants no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

## II. *Fraudulent Transfer*

The statute of limitations for the plaintiffs' fraudulent transfer claim is four years "after the transfer was made or the obligation was incurred or,

if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." RSA 545-A:9, I (1997). The defendants contend that the plaintiffs' claim is untimely because it was brought more than four years after the March 1995 asset sale. The plaintiffs argue that the relevant transfer is not the March 1995 asset sale, but rather the noncompetition agreements between Norwood Realty and the defendants. They assert that because they did not discover the terms of these agreements until June 2001, their fraudulent transfer claim, brought in April 2002, is timely. We disagree.

To maintain a fraudulent transfer claim under the Uniform Fraudulent Transfer Act, codified at RSA chapter 545-A, the plaintiffs must show that the defendants transferred assets "[w]ith actual intent to hinder, delay, or defraud" the plaintiffs. RSA 545-A:4, I(a) (1997). The plaintiffs allege that Mr. Phillips "structured the deal so as to avoid the obligation to the Plaintiffs." The deal to which this allegation refers is the March 1995 asset sale, of which the noncompetition agreements were merely a part. The plaintiffs concede that they knew of the sale when it occurred.

Moreover, as their allegations in the second lawsuit reveal, the plaintiffs had reason to suspect in 1996 that Norwood Realty entered into the sale with the "actual intent to ... defraud" them. In their second lawsuit, the plaintiffs alleged that at the trial of the first litigation in 1996, a witness testified that in 1995, Mr. Phillips told him that Norwood Realty's counsel had determined a method to avoid payment on the promissory note. The plaintiffs further alleged, "The commercial real estate assets were transferred from [Norwood Realty] to [Granite] for little or no consideration to remove the assets from the reach of the creditors of [Norwood Realty]."

With respect to the defendants themselves, the plaintiffs alleged in their opposition to a motion to dismiss the second lawsuit, that:

> The allegations of the petition may reasonably be interpreted in favor of the Plaintiffs to show that Robert Phillips and Rose Marie Phillips, the officers, directors and shareholders of [Norwood Realty] structured the sale of the assets to [EMRE] and to [Granite] to avoid the note obligations. They were intimately involved in [Norwood Realty] before the transfer and with both successor companies after the transfer.

> Although Mr. and Ms. Phillips have made it impossible for [Norwood Realty] to honor the promissory note, they continue as principals in the successor entities generating income with assets of [Norwood Realty]. Both Mr. and Ms. Phillips are financially involved in the successor companies.

■ As their own allegations demonstrate, the plaintiffs: (1) knew of the March 1995 asset sale when it occurred; (2) had reason to suspect that it was fraudulent, at least as of 1996, when a witness testified at the trial of the first lawsuit regarding a method to avoid payment on the promissory note; and (3) had discovered, at least as of 1998, when they brought their second lawsuit, that the March 1995 sale allegedly was entered into with the "actual intent" to defraud them. Their fraudulent transfer claim, brought in 2002, more than four years after the March 1995 sale and more than one year after the plaintiffs discovered that the sale was allegedly fraudulent, is thus untimely.

■ Because we conclude that the plaintiffs' petition to pierce the corporate veil is timely, we remand to the trial court to address its merits. Our conclusion that the plaintiffs' fraudulent transfer claim is untimely does not prohibit them from raising fraud as a basis to pierce the corporate veil. On remand, the plaintiffs may proceed upon their petition to pierce the corporate veil with respect to enforcing the judgment entered in the first litigation and may assert that piercing the corporate veil is warranted because the defendants promoted an injustice or fraud against them.

*Affirmed in part; reversed in part; and remanded.*

NADEAU and DUGGAN, JJ., concurred; DALIANIS, J., dissented.

DALIANIS, J. dissenting. While I concede that there may be cases in which a party obtaining a judgment against a corporation may later sue the corporation's stockholders, under the doctrine of piercing the corporate veil, to attempt to satisfy the judgment even if such suit is beyond the prescribed three-year statute of limitations for personal actions, this is not that case. The reasoning behind treating the plaintiffs' lawsuit against the defendants as an action to enforce a judgment against the corporation, thereby allowing for the application of the twenty-year statute of limitations under RSA 508:5 (1997), is appropriate when the defendants have engaged in unsavory business practices that the plaintiffs discover *after* securing a judgment against the corporation. As the majority points out, public policy compels the decision to apply the twenty-year statute of limitations in such a case to prevent stockholders from using the corporate form as a "cloak for fraud."

The trial court found in this case, however, that the plaintiffs knew or should have known about the defendants' fraudulent transaction upon receipt of discovery responses on March 31, 1995. Judgment against the corporation was not final until February 2001. As a result, the plaintiffs should have raised the issue of the defendants' fraudulent activities before

entry of final judgment and, therefore, should not be permitted the benefit of the twenty-year statute of limitations in order to pierce the corporate veil. For this reason, I respectfully dissent.