**John MICHNOVEZ, individually and as Executor of the Estate of Velma Michnovez; and Susan Michnovez**

**v.**

**BLAIR, LLC; A–One Textile and Towel Industries; Bureau Veritas Consumer Products Services (Pre) Ltd.; Bureau Veritas Consumer Products Services, Inc.; and Bureau Veritas, S.A.**

**Civil No. 10–cv–110–LM.**

United States District Court, D. New Hampshire.

June 13, 2011.

Alan L. Cantor, David P. Angueira, Edward M. Swartz, Swartz & Swartz, Boston, MA, for Plaintiffs.

D. Patterson Gloor, Jori L. Young, Steven M. Shear, Gloor Law Group, Chicago, IL, Dona Feeney, Feeney Rousseau & Fraas, PLLC, Manchester, NH, for Defendants.

## ORDER

LANDYA McCAFFERTY, United States Magistrate Judge.

In twelve counts, plaintiffs assert nearly identical claims for wrongful death, enhanced compensatory damages, conscious pain and suffering, personal injuries, and negligent infliction of emotional distress against each of two defendants: Blair, LLC ("Blair") (Counts I–V) and A–One Textile and Towel Industries ("A–One") (Counts VII–XI). Plaintiffs assert the same six claims against Bureau Veritas, S.A. ("BV S.A."), Bureau Veritas Consumer Products Services, Inc. ("BV Inc."), and Bureau Veritas Consumer Products Services (Pre) Ltd. ("BV Ltd.") (Counts XIII–XVIII). Plaintiffs' claims arise from the death of Velma Michnovez, which occurred when a bathrobe she purchased from Blair caught fire while she was wearing it. Before the court is BV Inc.'s motion to dismiss all six of the claims asserted against it. Plaintiffs object. For the reasons given, BV Inc.'s motion to dismiss is granted.

### The Legal Standard

A motion to dismiss for "failure to state a claim upon which relief can be granted," Fed.R.Civ.P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). That is, the complaint "must contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims." *Fantini v. Salem State Coll.*, 557 F.3d 22, 26 (1st Cir.2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), a trial court "accept[s] as true all well-pled facts in the complaint and draw[s] all reasonable inferences in favor of plaintiffs." *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 771 (1st Cir.2011) (quoting *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir.2010)). But, "naked assertions devoid of further factual enhancement need not be accepted." *Plumbers' Union*, 632 F.3d at 771 (1st Cir.2011) (quoting *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir.2009)). Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *United Auto., Aero., Agric. Implement Workers of Am. Int'l Union v. Fortuño*, 633 F.3d 37, 41 (1st Cir.2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *United Auto. Workers*, 633 F.3d at 40 (citation omitted). On the other hand, a Rule 12(b)(6) motion should be granted if "the facts, evaluated in [a] plaintiff-friendly manner, [do not] contain enough meat to support a reasonable expectation that an actionable claim may exist." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir.2008) (citations omitted). That is, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Plumbers' Union*, 632 F.3d at 771 (citation omitted).

### Background

The relevant factual allegations, drawn from plaintiffs' second amended complaint, are as follows.

Velma Michnovez died on November 23, 2007, when a cotton chenille bathrobe she was wearing caught fire while she was cooking at her stove. She purchased the

bathrobe from Blair. The bathrobe was manufactured by A–One.

According plaintiffs, BV Inc.'s actionable conduct consists of the following:

Prior to January 9, 2006, the defendant Blair contracted with [BV S.A., BV Inc.] and/or [BV Ltd.] to test said model 30931 robe to ensure it complied with federal flammability standards. [BV Ltd.] conducted flammability testing on the robe. [BV S.A., BV Inc.] and/or [BV Ltd.], in test reports bearing the "Bureau Veritas" logo, certified to Blair that said model 30931 robes complied with federal flammability standards, resulting in said robes being marketed to consumers in the United States, including Velma Michnovez.

In April 2009, defendant Blair, in cooperation with the Consumer Product Safety Commission, recalled its model 30931 robes on the basis that they did not comply with federal flammability standards.

Prior to receiving notice of said recall, the plaintiffs in this action were not aware and had no reason to be aware that the robe worn by Velma Michnovez on the date of her death did not meet federal flammability standards and was otherwise in an unreasonably dangerous, defective condition.

The test results which [BV S.A., BV Inc.] and/or [BV Ltd.] provided to Blair were a substantial factor in Blair's decision to sell the model 30931 bathrobe to consumers.

Second Am. Compl. (doc. no. 55) ¶¶ 17–20.

The test report that plaintiffs refer to was attached as an exhibit to plaintiffs' motion for leave to file a second amended complaint. Given plaintiffs' reference to that report in their complaint, it is appropriate for the court to consider it when ruling on BV Inc.'s motion to dismiss. *See United Auto. Workers*, 633 F.3d at 39 ("when a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it") (quoting *Trans–Spec Truck Serv. Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir.2008)). Each page of the test report has, in the upper left-hand corner, an oval-shaped graphic logo depicting a person, surrounded by the words "Bureau Veritas 1828." Pl.'s Mot. for Leave, Ex. B (doc. no. 44-4), at 1. Below the oval is a bar that reads "MTL—ACTS." *Id.* The first page of the report identifies the tests as having been conducted by "Bureau Veritas Consumer Products Services (Pte) Ltd." *Id.* Finally, the bottom of the page lists the address, telephone number, fax number, e-mail address, and web address for BV Ltd. *Id.* The stationary provides neither the name of nor contact information for any other BV entity.

Regarding the relationship among the three BV entities that are defendants in this case, plaintiffs allege that "[a]t all times herein relevant, the defendants . . . held themselves out as a single global entity known as 'Bureau Veritas'. They did so through communications to customers on 'Bureau Veritas' stationary and through advertisements and information published on the Internet and otherwise." Second Am. Compl. ¶ 9. The stationary is described above. The portions of the BV web site appended to plaintiffs' motion for leave to file a second amended complaint identify and provide contact information for a BV entity in France and for BV Ltd. While the site mentions labs in Massachusetts, where BV Inc. is incorporated, and New York, where BV Inc. has a principal place of business, the site does not mention BV Inc. in any way.

Plaintiffs also allege that "[t]he defendants, [BV Ltd.] and [BV Inc.] were and

still are wholly owned subsidiaries of [BV S.A.]." Second Am. Compl. ¶ 10. Finally, plaintiffs allege:

At all times herein relevant, the defendant, [BV Ltd.] was and still is an agent, department, alter-ego, and/or instrumentality of the defendants [BV Inc.] and [BV S.A.] in that these defendants held themselves out as a single global entity such that failure to treat them as such would lead to an inequitable result as to the plaintiffs in this action; in that unity of interest and ownership exists such that the separate personality of [BV Ltd.] no longer exists; in that individuals in [BV Inc.] and [BV S.A.] exercise substantial control over [BV Ltd.] and in that the Bureau Veritas entities share human resources.

[BV Ltd., BV Inc. and BV S.A.] and each of them, at all times relevant herein were the partners, agents, employers, employees, joint venturers, representatives, independent contractors, and other persons authorized, actually and/or impliedly, and ostensibly to act within the course and scope of their relationship and/or with the knowledge, consent, ratification and authorization of each of the other defendants.

*Id.* ¶¶ 11–12.

The heart of plaintiffs' complaint, as it relates to the BV defendants, is Count XIII, which asserts:

Because [BV Ltd., BV Inc. and BV S.A.] acted as a single global entity in connection with its activities in testing and certifying Blair Robe Model 30931, plaintiffs refer to said defendants as Bureau Veritas ("BV") in connection with the allegations of the remaining counts herein.

At all times hereinconcerned, defendant BV knew or should have known that if it certified that said chenille bathrobes complied with Federal flammability Standards that its customer Blair would sell such robes within the United States, including the State of New Hampshire. The death of Velma Michnovez was the direct and proximate result of the carelessness and negligence of the defendant as follows:

a. The defendant negligently tested and inspected said bathrobe and certified to its customer Blair that said robe complied with federal flammability standards, causing Blair to market said robe when it did not comply with federal flammability standards.

b. The defendant negligently failed to warn or instruct, adequately warn or adequately instruct its customer Blair that said robe did not comply with federal flammability standards, causing Blair to market said robe.

c. The defendant negligently failed to ensure that said bathrobe complied with federal flammability standards causing its customer Blair to market said robe when in fact said robe failed to comply with federal flammability standards.

d. The defendant negligently failed to warn and instruct its customer Blair that even if the robe did comply with federal flammability standards when tested, it was nevertheless unreasonably dangerous due to its construction of flammable 100% cotton chenille, a fabric that burns quickly, intensely and fiercely.

As a direct and proximate result of the negligence, of defendant as set forth herein, Velma Michnovez was caused to die.

Second Am. Compl. ¶¶ 56–59.

By way of further background: (1) Blair, a foreign corporation with a principal place of business in Pennsylvania, filed a suggestion of bankruptcy on January 20,

2011, doc. no. 36, but the automatic stay has since been lifted, *see* doc. no. 53; (2) A–One, a foreign corporation with a principal place of business in Pakistan, has been served, *see* doc. no. 48, but has not appeared; (3) BV S.A., a French corporation with a principal place of business in France, has not yet been served; and (4) BV Ltd., a foreign corporation with a principal place of business in Singapore, has appeared, but has moved to dismiss for lack of personal jurisdiction, *see* doc. no. 57.

## Discussion

BV Inc. now moves to dismiss. Its main argument is that plaintiffs have not alleged sufficient facts to make it liable for any acts or omissions by BV Ltd. during the course of its testing of the fabric A–One used to make the robe that Blair sold to Velma Michnovez. Secondarily, BV Inc. argues that plaintiffs have not alleged facts sufficient to support the claim for enhanced compensatory damages they assert in Count XIV. In its motion to dismiss plaintiffs' amended complaint, which the court said it would consider to the extent it remains relevant to the second amended complaint, BV Inc. challenged the sufficiency of plaintiffs' factual allegations under the *Iqbal* standard and also advanced the legal argument that it did not owe a duty of care to plaintiffs. Plaintiffs counter BV Inc.'s first argument for dismissing the second amended complaint by contending that they have alleged sufficient facts to support treating the BV defendants as a single global enterprise under an alter-ego or veil-piercing theory and, on that basis, holding BV Inc. liable for BV Ltd.'s negligent testing and/or inspection of the fabric from which Velma Michnovez's robe was made. The court does not agree.

Plaintiffs rely primarily on two out-of-state cases involving some of the BV entities that are defendants in this case: *Bleu Products, Inc. v. Bureau Veritas Consum-*

*er Product Services, Inc.*, No. CV 08–2591CAS (JCx), 2009 WL 2412413 (C.D.Cal. Aug. 3, 2009) and *Playwell Toy, Inc. v. Bureau Veritas Consumer Products Services, Inc.*, No. 03–CV–0704C(SC), 2008 WL 4372654 (W.D.N.Y. Sept. 19, 2008). The argument against veil piercing in *Playwell* was raised by the corporate parent of the company that actually tested the product rather than by a corporate sibling. Thus, the reasoning of *Playwell* has no bearing on the question presented here, which is whether BV Inc. may be held liable for the conduct of its corporate sister, BV Ltd. Accordingly, the court turns to *Bleu Products*.

In that case, Bleu Products had a contract with a factory in China to produce jackets and had another contract with Costco to sell those jackets in its stores. 2009 WL 2412413, at *6. In addition, Costco arranged with Bleu Products to have the jackets tested. To that end, Bleu Products filled out a Costco test-request form, with the understanding that Costco would forward the form to four BV entities, including BV Inc. and BV–Shanghai, the entity that performed the actual testing. *Id.* After the jackets were delivered to hundreds of Costco stores, and Costco discovered that the jackets had a significant button defect, *see id.* at *1, Bleu Products sued a host of BV entities, asserting multiple causes of action, including negligence. *See id.*

Two of the BV entities, including BV Inc., moved to dismiss. *Id.* The court denied BV Inc.'s motion to dismiss the negligence claim, on grounds that the plaintiff had adequately alleged that BV Inc. was an alter ego of BV–Shanghai, the entity that performed the testing. *Id.* at *11. Judge Snyder explained her decision:

> The Court finds that plaintiff's [sic] have alleged sufficient facts supporting alter ego liability. First, plaintiff has

alleged with sufficient facts to support its theory of a unity of interest and ownership exists such that separate personalities of the corporation no longer exist. *See Oddenino & Gaule v. United Financial Group*, 1999 U.S.App. LEXIS 29506, 1999 WL 1011910 (9th Cir.1999). For example, in support of its "single enterprise theory," plaintiff has alleged that a few individuals exercised a great deal of control over the various BV entities, that different BV entities share virtually identical addresses, and that the various entities share human resources[.] *See [Las Palmas Associates v. Las Palmas Center Associates]*, 235 Cal.App.3d [1220,] 1249, 1 Cal.Rptr.2d 301, [318 (Cal.Ct.App.1991)]. Furthermore, plaintiff has sufficiently alleged intent on the part of defendants to defraud the public through concealment of the nature of the single enterprise and misrepresentation of the corporate structure, and has adequately set forth allegations that could lead to a finding of inequitable result. *See Oddenino*, 1999 U.S.App. LEXIS 29506 at *5, 1999 WL 1011910 [at *2] ("the purpose of the alter ego doctrine is to afford such creditors protection where some conduct amounting to bad faith makes it inequitable ... for the equitable owner of a corporation to hide behind its corporate veil"). Therefore, the Court finds dismissal of the alter ego allegations at this stage of the proceedings to be inappropriate.

*Id.* at *15 (emphasis added).

*Vis à vis* the relationship between BV Inc. and BV–Shanghai, the operative complaint in *Bleu Products* alleged that BV Inc.: "(1) was responsible for setting up test protocols that governed the inspections performed by BV–Shanghai; (2) was directly involved in monitoring the inspections; and (3) responded by telephone to plaintiff's complaint concerning the inspection." *Id.* at *13. The complaint further alleged that BV Inc.: "(1) was responsible for establishing contracts to which BV–Shanghai is alleged as a party; (2) is named in the Costco 'Request' form; and (3) caused BV–Shanghai to perform the inspection as an alter ego of other named defendants." *Id.* Finally, the Bleu Products complaint alleged that BV Inc. "knew that an inspection report was fraudulent prior to shipment of the jackets, and that [BV Inc.] directly participated in evading responsibility by calling plaintiff and launching an allegedly phony investigation." *Id.* at *14. Based on those factual allegations, Judge Snyder agreed with the plaintiffs "that, under the single-enterprise rule, [BV Inc.] can be found liable as an alter ego of BV–Shanghai in spite of the fact that [BV Inc.] and BV–Shanghai are sister companies." *Id.* at *13 (citing *Las Palmas*, 1 Cal.Rptr.2d at 318).

*In Las Palmas*, on which Judge Snyder relied, the California Court of Appeals explained:

Generally, alter ego liability is reserved for the parent-subsidiary relationship. However, under the single-enterprise rule, liability can be found between sister companies. The theory has been described as follows: " 'In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it. The court thus has constructed for purposes of imposing liability an entity unknown to any secretary of state comprising assets and liabilities of two or more legal personalities; endowed that entity with the assets of both, and charged it with the liabilities of one or both.' " (2 Marsh's Cal. Corp. Law (3d ed.1990) § 16.23, p. 1416, quoting a law

review article by Professor Berle found at 47 Colum. L.Rev. (1947) 343, 350.) 1 Cal.Rptr.2d at 318.

The rather complex factual situation in *Las Palmas* consisted of the following: (1) two corporations, Devcorp and Hahn, plus several others, were the sellers of a shopping center, 1 Cal.Rptr.2d at 305; (2) Devcorp was a wholly owned subsidiary of Hahn, *id.;* (3) Hahn transferred all the shares of Devcorp to Trizec Centers, which, in turn, conveyed some of those shares to Goldlist Acquisition Corp. and the remainder to Trizec Equities, *id.* at 306. In a dispute between the sellers and the buyers of the shopping center, Hahn argued that the buyers were not entitled to pierce the corporate veil and hold it liable for Devcorp's conduct. *Id.* at 316–17. The California Court of Appeals held that veil piercing was appropriate, under the legal principles articulated above:

We find there is substantial evidence to support the conclusion that Hahn, Inc. and Devcorp formed a single enterprise for the purpose of committing a continuing fraud against buyers. First, the evidence that Hahn, Inc. had guarantied $43.2 million in loans and loan commitments to Devcorp strongly suggests Devcorp was undercapitalized for a company in the business of developing shopping centers. Likewise, in 1978 Hahn, Inc. issued two guaranties to buyers to protect the $2 million cash downpayment they made to Devcorp. Moreover, besides the loan guaranties, Hahn, Inc. temporarily guarantied the Phanny's Phudge lease, despite the fact that Hahn, Inc. no longer had a stock ownership interest in Devcorp. These guaranties indicate that Devcorp's survivability as a developer was intertwined with its dependence on Hahn, Inc.

Furthermore, Ernest Hahn and Robert Lees sat as directors on the boards of Hahn, Inc. and Devcorp. When Dev-

corp's board of directors fired the corporation's executives and staff, Hahn, Inc. used its employees, including its corporate counsel, to continue to manage what remained of the business. In short, the trial court reasonably could have concluded that Hahn, Inc. and Devcorp were combined into a single enterprise to defraud buyers.

*Id.* at 318.

Just as the judge in *Bleu Products* relied on *Las Palmas,* the *Las Palmas* court relied on *Pan Pacific Sash & Door Co. v. Greendale Park, Inc.,* 166 Cal.App.2d 652, 333 P.2d 802 (Cal.Dist.Ct.App.1958). In *Pan Pacific,* a supplier of building materials sued multiple defendants, including two corporations, Ralmor and Greendale, to recover the cost of various materials delivered to Ralmor, which was constructing houses on land owned by Greendale. *Id.* at 803, 805. The trial court determined that Greendale was an alter ego of Ralmor for the purpose of assuming liability for Ralmor's debts to Pan Pacific, and the court of appeals affirmed. *Id.* at 806.

In affirming, the appellate court relied on the following evidence: (1) the corporations had nearly identical shareholders, officers, and directors, *id.* at 805; (2) "[b]oth corporations' offices were located in the same premises and they had at least some employees in common," *id.;* (3) "the only business of the [two] corporations . . . was the construction of the houses upon the tract in question and the sale thereof," *id.* at 806; (4) each corporation had made numerous loans to the other, *id.;* and (5) both corporations operated largely on money borrowed from two individuals who were officers, directors, and shareholders of both corporations, *id.* Based on those facts, the court concluded:

[T]he trial court was warranted in concluding, as it did, that each corporation was but an instrumentality or conduit of

the other in the prosecution of a single venture, namely, the construction and sale of houses upon the tract in question. Both corporations had the same stockholders, directors and officers, occupied the same premises as their offices and had common employees. Each was without substantial capital. When Greendale was without funds required for its operation and Ralmor had funds available a loan was made from the latter to the former and vice versa. Each corporation received the benefit of the materials supplied by the plaintiff and incorporated in the houses which were under construction upon the tract. There was such unity of interest and ownership that the separateness of the two corporations had in effect ceased and an adherence to the fiction of a separate existence of the two corporations would, under the circumstances here present, promote injustice and make it inequitable for Greendale to escape liability for an obligation incurred as much for its benefit as for Ralmor.

*Id.* (citation omitted).

There are at least three problems with plaintiffs' reliance on *Bleu Products:* (1) Bleu Products was decided under a rule of California law that does not appear ever to have been adopted in New Hampshire; (2) the facts alleged in *Bleu Products* are substantially different from the facts plaintiffs allege in this case; and (3) plaintiffs fail to make allegations sufficient to establish injustice or fraud, which is necessary for veil piercing in New Hampshire. The court considers each issue in turn.

*A. New Hampshire Veil–Piercing Law*

Because both parties operate as if New Hampshire veil-piercing law applies, the court, too, proceeds on the presumption that it does. As the court of appeals for this circuit has explained, "[w]here 'there is at least a reasonable relation between the dispute and the forum whose law has been selected by the parties, we will forego an independent analysis of the choice-of-law issue and apply' the state substantive law selected by the parties." *Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118, 127 n. 5 (1st Cir.2006) (quoting *Fed. Ins. Co. v. Raytheon Co.*, 426 F.3d 491, 496 n. 2 (1st Cir.2005)).

To be sure, it would be legitimate to question the reasonable relation between New Hampshire and a dispute over piercing the veil between a Singapore corporation and a Massachusetts corporation to hold the latter liable for the conduct of the former. And, one might reasonably argue that the appropriate veil-piercing law to apply here is the law of Singapore. *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 647 (5th Cir.2002) (holding that in diversity case brought in the Middle District of Louisiana, district court correctly determined "that the Louisiana State Supreme Court would most likely conclude that the law of the state of incorporation governs the determination when to pierce a corporate veil"). But, the court is reluctant to resolve a legal issue the parties have not raised and, so, applies New Hampshire veil-piercing law.

 That said, the most obvious problem with plaintiffs' reliance on *Bleu Products* is that there is no support in the decisions of the New Hampshire Supreme Court for applying the "single-enterprise rule" on which Judge Snyder relied in *Bleu Products*. In New Hampshire, "[t]he doctrine of piercing the corporate veil is an equitable remedy." *LaMontagne Bldrs., Inc. v. Bowman Brook Purchase Grp.*, 150 N.H. 270, 274, 837 A.2d 301 (2003) (quoting *Terren v. Butler*, 134 N.H. 635, 640, 597 A.2d 69 (1991)).

When courts pierce the corporate veil, they "assess individual liability where the owners have used the corporate identity to promote injustice or fraud." *Norwood Group v. Phillips*, 149 N.H.

722, 724, 828 A.2d 300 (2003). They "disregard the fiction that the corporation is independent of its stockholders and treat the stockholders as the corporation's 'alter egos.'" *Id.* *N.E. Homes, Inc. v. R.J. Guarnaccia Irrevocable Trust,* 150 N.H. 732, 737–38, 846 A.2d 502 (2004) (parallel citation omitted). In addition, the New Hampshire Supreme Court "will pierce the corporate veil and assess individual liability ... where a [shareholder] has suppressed the fact of incorporation ... and where an individual expressly agrees to personal liability for a corporation's debts." *Gautschi v. Auto Body Discount Ctr., Inc.,* 139 N.H. 457, 462, 660 A.2d 1076 (1995) (citing *Peter R. Previte, Inc. v. McAllister Florist, Inc.,* 113 N.H. 579, 582, 311 A.2d 121 (1973); *Ashland Lumber Co. v. Hayes,* 119 N.H. 440, 441, 402 A.2d 201 (1979)). Similarly, veil piercing is appropriate where a shareholder "creates a false appearance which causes a reasonable creditor to misapprehend the worth of the corporate obligor." *Previte,* 113 N.H. at 583, 311 A.2d 121 (quoting Comment, Ohio St. L.J. 441, 468 (1967)).

■ "New Hampshire courts do not 'hesitate[ ]' to disregard the fiction of the corporation' when circumstances would lead to an inequitable result." *Terren,* 134 N.H. at 639–40, 597 A.2d 69 (quoting *Druding v. Allen,* 122 N.H. 823, 827, 451 A.2d 390 (1982)). But, at the same time, the New Hampshire Supreme Court recognizes that "one of the desirable and legitimate attributes of the corporate form of doing business is the limitation of the liability of the owners to the extent of their investment." *LaMontagne,* 150 N.H. at 275, 837 A.2d 301 (quoting *Previte,* 113 N.H. at 582, 311 A.2d 121).

■ Based on the foregoing, in New Hampshire, corporate veil piercing and the alter-ego doctrine have been used to do one thing only: hold the owners of corporations liable for the debts of the corporations they own. Plaintiffs have identified no authority, and the court's research has identified none, for the proposition that New Hampshire would, if presented with the question, adopt a single-enterprise theory such as California's, under which an entity other than a the owner of a corporation could be held liable for that corporation's conduct by means of veil piercing. Moreover, in an opinion in which it rejected a plaintiff's claim that it was entitled to hold an individual liable for the debts of two corporations he controlled, the New Hampshire Supreme Court stated that "the fact that one person controls two corporations is not sufficient to make the two corporations and the controlling stockholder the same person under the law." *Vill. Press, Inc. v. Stephen Edward Co.,* 120 N.H. 469, 471, 416 A.2d 1373 (1980) (citing *Waff Bros., Inc. v. Bank of N.C., N.A.,* 289 N.C. 198, 221 S.E.2d 273 (1976)).

■ Plaintiffs' argument that New Hampshire does, in fact, recognize the single-enterprise theory, as applied in *Bleu Products,* is not persuasive. Plaintiffs base their argument on *Norwood.* However, the only veil-piercing issue the court decided in Norwood was that "the plaintiffs' equitable petition to pierce the corporate veil [was] governed by the twenty-year statute of limitations for actions to enforce a judgment." 149 N.H. at 725, 828 A.2d 300. The court "remand[ed] [the veil-piercing petition] to the trial court to address its merits." *Id.* at 727, 828 A.2d 300. Moreover, while the Norwood court found persuasive the reasoning of *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 608 F.Supp. 1261 (S.D.N.Y.1985), aff'd in part, rev'd in part, 933 F.2d 131 (2d Cir.1991), the only reasoning from *Passalacqua* that the Norwood court applied was what Judge Edelstein had to say about the proper statute of limitations, *see* 149 N.H. at 725, 828 A.2d 300. Beyond that, the decision in

*Passalacqua* did not resolve any veil-piercing or alter-ego issues on the merits. *See* 608 F.Supp. at 1265. Finally, the veil piercing at issue in *Norwood* was a garden-variety attempt to hold corporate shareholders liable for the debts of the corporation, *see* 149 N.H. at 723, 828 A.2d 300, not an attempt to hold a corporate entity liable for the conduct of its corporate sibling. Thus, *Norwood* simply did not involve the question presented in this case.

 In sum, *Norwood* provides no support for the proposition that New Hampshire subscribes to the single-enterprise theory that Judge Snyder applied in *Bleu Products*. Given that plaintiffs' claims against BV Inc. are based upon a principle of law not yet adopted in New Hampshire, this court is perhaps not the best forum for pursuing a claim that depends on piercing the corporate veil between BV Inc. and BV Ltd. "This court is and should be hesitant to blaze new, previously uncharted state-law trails." *Pimental v. Dartmouth–Hitchcock Clinic,* 236 F.Supp.2d 177, 188 (D.N.H.2002)(quoting *Dennis v. Husqvarna Forest & Garden Co.,* Civ. No. 94–309–M, 1994 WL 759187, at *7 (D.N.H. Dec. 27, 1994)). Accordingly, " '[l]itigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed' through the field of state common law." *Minion Inc. v. Burdin,* 929 F.Supp. 521, 526 (D.N.H.1996) (quoting *Ryan v. Royal Ins. Co.,* 916 F.2d 731, 744 (1st Cir.1990)); *see also Gill v. Gulfstream Park Racing Ass'n, Inc.,* 399 F.3d 391, 402 (1st Cir.2005) ("A federal court sitting in diversity cannot be expected to create new doctrines expanding state law.") (citing *A. Johnson & Co. v. Aetna Cas. & Sur. Co.,* 933 F.2d 66, 73 n. 10 (1st Cir.1991)). Because plaintiffs' single-enterprise theory does not appear to be the

law of New Hampshire, BV Inc. is entitled to dismissal of the claims plaintiffs assert in Counts XIII through XVIII.

**B. The Factual Allegations Concerning BV Inc.**

Even if New Hampshire law did permit plaintiffs to assert a claim against BV Inc. to recover for BV Ltd.'s alleged negligence under a veil-piercing or alter-ego theory such as the one employed in *Bleu Products* and *Pan Pacific,* the facts alleged by plaintiffs in this case are so unlike the facts supporting veil piercing under California law that BV Inc. would still be entitled to dismissal of plaintiffs' claims against it.

Before turning to an analysis of plaintiffs' factual allegations, however, it is important to clarify things just a bit. While plaintiffs' second amended complaint attempts to make one big defendant out of BV S.A., BV Inc. and BV Ltd., what is really at issue is plaintiffs' attempt to pierce the corporate veil between BV Inc. and BV Ltd. so as to hold BV Inc. liable for BV Ltd.'s conduct. To the extent that plaintiffs attempt to create one unitary BV entity out of a parent company and two of its subsidiaries, in which each component entity is responsible for the conduct of every other component entity, plaintiffs not only rely on a theory the New Hampshire Supreme court appears to have rejected, *see Village Press,* 120 N.H. at 471, 416 A.2d 1373, but they also seem to extend the "single-enterprise theory" beyond even its application in California.

In *Pan Pacific,* the court pierced the corporate veil between Ralmor and Greendale in order to hold Greendale liable for Ralmor's debts. *See* 333 P.2d at 806. In *Las Palmas,* the court described the single-enterprise rule as allowing liability to flow between "sister companies," and created a single-enterprise composed of only two corporations.[1] *See* 1 Cal.Rptr.2d at

---

1. The *Las Palmas* court also quoted a California treatise's quotation of a 1947 law-review

318. In *Bleu Products*, which involved BV S.A., BV Inc., and BV–Shanghai, both the plaintiff and the court treated the relationships between BV S.A. and each of its two subsidiaries separately. *See* 2009 WL 2412413, at \*13–\*15. Thus, the court appears to have regarded BV S.A. and BV–Shanghai as a single enterprise and BV Inc. and BV–Shanghai as a single enterprise, rather than treating BV S.A., BV Inc., and BV–Shanghai as one three-component single enterprise. In other words, plaintiffs have identified no case in which a court has created anything other than a two-entity single enterprise, which means that they have identified no authority for the creation of the three-entity single enterprise they ask the court to create here. Thus, under the California single-enterprise veil-piercing theory, as applied by the courts that decided *Bleu Products, Las Palmas,* and Pan Pacific, plaintiffs can state claims against BV Inc. only to the extent they allege facts which, if true, would support a determination that BV Inc. was BV Ltd.'s alter ego. They have not done so.

Plaintiffs' clearest factual allegations are that: (1) BV Ltd. conducted flammability testing on the fabric A–One used to make the robe Blair sold to Velma Michnovez; and (2) BV Inc. and BV Ltd. are wholly owned subsidiaries of BV S.A. Rather more fuzzy are plaintiffs' allegations that: (1) Blair contracted with BV S.A., BV Inc., and/or BV Ltd. to perform fabric testing; (2) BV S.A., BV Inc. and/or BV Ltd. certified to Blair that the fabric met certain flammability standards. Plaintiffs also allege that BV S.A., BV Inc., and BV Ltd. held themselves out as a single global entity through the stationary used for BV Ltd.'s report to Blair, described above, and through a web site,

portions of which are attached as an exhibit to plaintiffs' motion for leave to file a second amended complaint. The testing report plaintiffs attached to their motion for leave to file a second amended complaint bears a generic "Bureau Veritas" logo but includes the name of only one of the three BV entities named as defendants in this case, BV Ltd. Finally, plaintiffs allege, again without much precision, that: BV Ltd. was "an agent, department, alterego, and/or instrumentality" of BV S.A. and BV Inc.; (2) individuals in BV S.A. and BV Inc. exercised substantial control over BV Ltd.; (3) all three entities shared human resources; and (4) all three entities "were the partners, agents, employers, employees, joint venturers, representatives, independent contractors" of each other.

Nowhere does the second amended complaint make a specific factual allegation linking BV Inc. and BV Ltd. Rather, plaintiffs make allegations, generally conclusory, linking all three entities with the conjunction "and/or," or they make allegations that link BV Ltd. to BV S.A. and BV Inc., without differentiating between BV S.A. and BV Inc., and without further identifying specific links between BV Ltd. and BV Inc.

By contrast, in *Bleu Products*, the operative complaint contained numerous specific factual allegations concerning the relationship between BV Inc. and BV–Shanghai. Specifically, the plaintiffs in *Bleu Products* alleged that BV Inc.: (1) set up the testing protocols used by BV–Shanghai, 2009 WL 2412413, at \*13; (2) monitored the inspections conducted by BV–Shanghai, *id.;* (3) responded to the plaintiff's complaint about the inspection conducted by BV–Shanghai, *id.;* (4) estab-

---

article that mentioned the possibility of a single enterprise composed of "two or more legal personalities," 1 Cal.Rptr.2d at 318, but,

again, the single enterprise the *Las Palmas* court actually created was composed of only two legal personalities.

lished the contract between the plaintiff and BV–Shanghai, *id.;* (5) was named in the Costco request form, *id.;* (6) caused BV–Shanghai to conduct the testing at issue, *id.;* (7) knew that the testing report prepared by BV–Shanghai was fraudulent before the jackets were shipped to Costco, *id.* at *14; and (8) telephoned the plaintiffs and initiated an allegedly phony investigation into BV Ltd.'s inspection, *id.* The differences between the factual allegations in *Bleu Products* and this case are dramatic, so much so that the court concludes that, in this case, the allegations purporting to establish alter-ego liability fail to meet the pleading standards established by *Iqbal.* Plaintiffs have simply failed to make factual allegations concerning BV Inc.'s conduct sufficient to make BV Inc. liable for the acts or omissions of BV Ltd. under California's single-enterprise theory.

In like manner, the facts alleged in the second amended complaint are, with one exception, substantially different from the facts of *Pan Pacific.* In *Pan Pacific,* the plaintiff proved that the shareholders of Ralmor were R.L. Blink, M.S. Hoffberg, and their wives, while the shareholders of Greendale were Blink and Hoffberg. 333 P.2d at 805. Here, plaintiffs allege that BV Inc. and BV Ltd. are both wholly owned subsidiaries of BV S.A. But there the similarity ends.

In *Pan Pacific,* the plaintiff proved that the directors of Ralmor were Blink, Hoffberg, and their wives, while the directors of Greendale were Blink, Hoffberg, and their attorney, who stopped attending board meetings approximately one month after Greendale was incorporated. 333 P.2d at 805. Here, plaintiffs allege no facts concerning the directors of BV Inc. and BV Ltd. In Pan Pacific, the plaintiff proved that the officers of both Ralmor and Greendale were Blink and Hoffberg. *Id.* Here, plaintiffs allege no facts concern-

ing the officers of BV Inc. and BV Ltd. In *Pan Pacific,* the plaintiff demonstrated co-mingling of assets by proving a pattern of loans between Ralmor and Greendale. *Id.* at 806. Here, plaintiffs allege no facts that would support a finding that BV Inc. and BV Ltd. co-mingled their assets. In *Pan Pacific,* the plaintiff demonstrated undercapitalization by proving that both Ralmor and Greendale operated largely on borrowed money, were heavily indebted, and unable to pay their obligations. *Id.* Here, plaintiffs allege no facts that would support a finding that either BV Inc. or BV Ltd. was undercapitalized. Aside from common ownership, plaintiffs in this case allege none of the factors that inspired the court in *Pan Pacific* to pierce the corporate veil between Ralmor and Greendale.

To conclude, even if the California single-enterprise rule were the law of New Hampshire, plaintiffs have not alleged facts sufficient to justify piercing the corporate veil between BV Inc. and BV Ltd.

### C. Insufficient Allegations of Injustice or Fraud

Finally, even if New Hampshire recognized California's single-enterprise rule, and even if plaintiffs had adequately alleged conduct by BV Inc. of the sort that would subject it to liability for BV Ltd.'s conduct, plaintiffs' claims against BV Inc. would still be subject to dismissal for a failure to adequately allege injustice or fraud.

As the court has already noted, in New Hampshire, "[w]hen courts pierce the corporate veil, they 'assess individual liability where the owners have used the corporate identity to promote injustice or fraud.'" *N.E. Homes,* 150 N.H. at 737, 846 A.2d 502 (quoting *Norwood,* 149 N.H. at 724, 828 A.2d 300). As for what constitutes injustice or fraud, the New Hampshire Supreme Court has explained:

In determining whether it is appropriate to apply the alter ego doctrine, other courts have inquired whether the corporation is undercapitalized, *Ize Nantan Bagowa, Ltd. v. Scalia,* [118 Ariz. 439, 577 P.2d 725 (Ariz.Ct.App.1978) ]; *Harris v. Curtis,* 8 Cal.App.3d 837, 87 Cal. Rptr. 614 ( [Cal.Ct.App.] 1970), and whether the stockholder is using the corporation to further his own private business rather than that of the corporation. *House of Koscot Dev. Corp. v. American Line Cosmetics, Inc.,* 468 F.2d 64 (5th Cir.1972); *Holahan v. Henderson,* 277 F.Supp. 890 (W.D.La. 1967); *Kirk v. H.G.P. Corp.,* 208 Kan. 777, 494 P.2d 1087 ( [Kan.] 1972).

*Village Press,* 120 N.H. at 471, 416 A.2d 1373 (parallel citations and subsequent history omitted).

In *LaMontagne,* the New Hampshire Supreme Court affirmed the trial court's decision to pierce the corporate veil and find a corporation's owner, R. Scott Brooks, liable for the corporation's debts to the plaintiff based on the following findings:

(1) Brooks breached an express promise to LaMontagne and LBI to pay LBI out of the April 30, 1997 loan proceeds; (2) Brooks made the promise to pay LBI in order to stop LaMontagne from filing a mechanic's lien or interfering with the loan; (3) Brooks knew that the promise to pay LBI when confirmed and documented by Attorney Cleary would cause LaMontagne to not file a mechanic's lien or interfere with the bank loan; (4) Brooks had no intention of honoring the promise to pay LBI; (5) Brooks breached his promise to pay LBI without good cause; (6) Brooks' claimed reasons for breaching the promise to pay LBI were disingenuous and raised in bad faith; and (7) Brooks, his family, or his family-controlled business received most or all of the loan proceeds.

150 N.H. at 275, 837 A.2d 301.

In *Terren,* the New Hampshire Supreme Court affirmed the trial court's decision to pierce the corporate veil and hold a corporation's shareholders liable when the trial court "found that the substantial depletion of corporate assets by defendants Butler [the shareholders] after being advised that defects existed in the project provides a sufficient basis to find that defendants Butler used the corporate entity to promote an injustice and/or fraud on the plaintiffs." 134 N.H. at 640, 597 A.2d 69. The evidence on which the trial court relied included the following: (1) the defendants were the sole shareholders and directors of the corporation whose veil was pierced; (2) the defendants never paid the stated consideration for their shares in the corporation; (3) the defendants paid themselves compensation of over $150,000 in each of two successive years; (4) the defendants received nearly $250,000 in repayment of shareholder loans; (5) the defendants received more than $90,000 in stock distributions; and (6) the corporation's sole asset was a condominium project valued at $100,000. *Id.*

*LaMontagne* and *Terren* are the only two opinions since 1945 in which the New Hampshire Supreme Court has ruled veil piercing to be appropriate. In this case, plaintiffs' second amended complaint makes no allegations of injustice or fraud that come close to the injustice or fraud at issue in *LaMontagne* and *Terren.* In both of those cases, the owners of the corporations in question enriched themselves out of corporate coffers, leaving the corporations themselves with insufficient resources to pay their debts, and in *LaMontagne,* Brooks upped the ante by making repeated misrepresentations to the corporation's creditors. Here, by contrast,

plaintiffs make no specific allegations concerning the relationship between BV Ltd. and the target of the veil piercing, BV Inc. Thus, plaintiffs do not allege any abuse or misuse of BV Ltd.'s corporate form by BV Inc., much less that BV Inc. benefitted from any such abuse.

In their objection to BV Inc.'s motion to dismiss, plaintiffs argue:

> It is known and alleged that failure to apply the single enterprise theory here will result in injustice to the plaintiffs. While [BV Inc.] claims that plaintiffs have pointed to no injustice, that argument is undercut by the recent filing by [BV Ltd.] of a motion to dismiss, arguing lack of personal jurisdiction in New Hampshire. That of course is the point of this entire master plan concocted by [BV S.A.]-to create small, undercapitalized testing entities in the far corners of the world, exert pervasive control over those entities, and then to argue that consumers in states such as New Hampshire cannot recover for negligently conducted testing due to lack of personal jurisdiction. Such a system must not be sanctioned; in fact, avoidance of such injustice is the precise justification for the doctrine of disregarding "the fiction of the corporation when circumstances would lead to inequitable results[.]" One of these inequitable results is to allow a defendant to ignore the corporate form in order to evade personal jurisdiction.

Pl.'s Obj. (doc. no. 59), at 7–8 (quoting *N. Laminate Sales, Inc. v. Matthews*, 249 F.Supp.2d 130, 141 (D.N.H.2003); citing *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 432–34, 2011 WL 1467183, at *4–*5 (4th Cir. Apr. 18, 2011); *Patin*, 294 F.3d at 653 n. 18). The second amended complaint, however, contains no allegations about BV Ltd.'s capitalization, no allegations that BV Inc. created BV Ltd., and no allegations that

BV Inc., on its own, exerted any control over BV Ltd. That is, while plaintiffs' objection posits some sort of unified global BV entity, the second amended complaint does not even include the kind of conclusory allegations found adequate by the *Bleu Products* court, *see* 2009 WL 2412413, at *13, to establish the injustice/fraud element of a veil-piercing claim.

Finally, notwithstanding plaintiffs' reliance on *Newport News* and *Patin*, the opinions in those cases provide no support for plaintiffs' argument for veil piercing. Plaintiffs' primary claim of injustice is that this court may lack personal jurisdiction over BV Ltd., the entity plaintiffs charge with negligently testing the material from which Velma Michnovez's robe was made. Without more, however, the mere fact that plaintiffs may not be able to sue BV Ltd. in this forum is insufficient to establish injustice. *See Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1379 (10th Cir.1980) (holding that, under Oklahoma law, "the possible inconvenience to plaintiff ... in suing Bethlehem Singapore in another forum is [not] the type of injustice which warrants piercing the corporate veil"). Claims fail for lack of personal jurisdiction all the time without any cognizable injustice being done to the unsuccessful plaintiff.

In *Newport News*, which involved a traditional veil piercing to reach the owner of a corporation, the court noted:

> [F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual ... that would not ordinarily be subject to personal jurisdiction in that court when the individual ... is an alter ego ... of a corporation that would be subject to personal jurisdiction in that court.

650 F.3d at 433, 2011 WL 1467183, at *4 (quoting *Patin*, 294 F.3d at 653 n. 18). In

Newport News, the injustice was that the forum the plaintiff selected had personal jurisdiction over a corporation that allegedly harmed the plaintiff, but lacked personal jurisdiction over an out-of-forum individual who was the corporation's alter ego. Based on the identity between the out-of-forum owner and the corporation over which the court had personal jurisdiction, the court pierced the veil between the corporation and its owner to hold the owner personally liable for the corporation's actions. *Id.* at 433–34, at *5.

This case is the inverse of *Newport News.* The court has personal jurisdiction over the entity plaintiffs seek to hold liable, *i.e.,* BV Inc.; what is potentially missing is personal jurisdiction over the entity that allegedly committed tortious acts against plaintiffs. So, rather than seeking to pierce a corporate veil to pull in out-of-forum assets to provide compensation for unlawful in-forum conduct, plaintiffs here seek to pierce a corporate veil to pull in out-of-forum conduct in the hope of holding an in-forum party liable for it. The bottom line is this: the rule from *Patin* restated in Newport News seems inapplicable to the facts of this case. Shielding assets by keeping them out of a forum in which the asset holder is doing business through an alter ego, which is what the corporate owner in Newport News did, is very different from being the corporate sibling of an out-of-forum entity alleged to have engaged in unlawful conduct, which is the claim in this case.

 Based on the foregoing, it could be that the better legal theory is not veil piercing, but vicarious liability. In *Luckett,* a case in which the plaintiffs attempted to hold an American corporation liable for the acts of its Singapore subsidiary, the court of appeals affirmed the trial court's grant of summary judgment to the defendants on the plaintiffs' veil-piercing theory, *see* 618 F.2d at 1378–79, but reversed and

remanded the trial court's grant of summary judgment to the defendants on the plaintiffs' vicarious liability theory, *see id.* at 1379–83. Unfortunately for plaintiffs in this case, even if they had invoked the theory of vicarious liability, their complaint does not allege sufficient facts that, if proven, would establish an agency relationship between BV Inc. and BV Ltd. sufficient to make BV Inc. liable for the acts and omissions of BV Ltd. *See Dent v. Exeter Hosp., Inc.,* 155 N.H. 787, 792, 931 A.2d 1203 (2007) (describing the elements of the relationship that must be proven to make a principal vicariously liable for the conduct of its agent); *Porter v. City of Manchester,* 151 N.H. 30, 39–40, 849 A.2d 103 (2004); *Boissonnault v. Bristol Fed'd Church,* 138 N.H. 476, 477–78, 642 A.2d 328 (1994). Because plaintiffs have not adequately alleged an agency relationship between BV Inc. and BV Ltd., they have failed to establish an adequate basis for holding BV Inc. vicariously liable for BV Inc.'s conduct.

In sum, plaintiffs have failed to allege sufficient facts to establish the injustice/fraud element of a veil-piercing claim, and have also failed to allege facts sufficient to support a claim that BV Inc. is vicariously liable for the acts and omissions of BV Ltd.

### Conclusion

As the court has explained: (1) the single-enterprise theory of corporate veil piercing is not the law of New Hampshire; (2) plaintiffs have failed to allege conduct by BV Inc. that would subject BV Inc. to liability under California's single-enterprise veil-piercing theory; (3) plaintiffs have failed to adequately allege the injustice/fraud element of a New Hampshire veil-piercing claim; and (4) plaintiffs have not alleged sufficient facts to state a claim that BV Inc. is vicariously liable for BV

Ltd.'s conduct. Accordingly, BV Inc.'s motion to dismiss (doc. no. 50) is granted.

SO ORDERED.