Hillsborough-northern judicial district
No. 2010-710

REGINA MBAHABA, INDIVIDUALLY AND AS MOTHER AND NEXT FRIEND
OF BENITA NAHIMANA

v.

THOMAS MORGAN d/b/a PROPERTY MANAGEMENT SERVICES a/k/a
Property Services Company, LLC

Argued: March 8, 2012
Opinion Issued: May 11, 2012

*Seufert Law Offices, P.A.*, of Franklin (*Christopher J. Seufert* and *Lexie Rojas* on the brief), and *Shaheen & Gordon, P.A.*, of Manchester (*Francis G. Murphy* orally), for the plaintiff.

*Craven Sullivan & Splendore, PLLC,* of Manchester (*Jason M. Craven* on the brief and orally), for the defendant.

DALIANIS, C.J. The plaintiff, Regina Mbahaba, individually and as next friend of her minor daughter, Benita Nahimana, appeals orders of the Superior Court (*McGuire* and *Tucker*, JJ.). The orders dismissed the plaintiff's direct claims against the defendant, Thomas Morgan, and granted summary judgment against her action seeking to pierce the limited-liability veil of a company managed by the defendant. We affirm in part, reverse in part, and remand.

## I. Background

We begin by summarizing the relevant facts as they appear in the record. The defendant owned Property Management Services a/k/a Property Services Company, a limited liability company (LLC) that managed an apartment building where the plaintiff and her family rented an apartment from June 2005 to July 2006. Biren Properties, Inc. owned the building and contracted with the defendant's LLC to provide management services. In addition to the defendant, the LLC employed one other person, who served as its receptionist and bookkeeper. The plaintiff's daughter, Benita, was poisoned by lead while living in the apartment, prompting an inspection by the New Hampshire Department of Health and Human Services, which revealed "lead exposure hazards" in the home.

As a result of the alleged injury to Benita caused by the lead contamination, the plaintiff filed lawsuits against the defendant and Biren Properties. The defendant moved to dismiss the action against him personally, arguing that, because he supervised the property on behalf of the LLC, he could not be "held personally liable for the debts or actions of the company." The plaintiff responded that she did not seek to hold the defendant liable merely because of his official position in the LLC, but because he "personally participated in the activity that caused injury to the [plaintiff and her daughter]." Ultimately, the claims against the defendant individually were dismissed, but the trial court allowed the plaintiff's claims against the LLC to proceed.

With the actions against his original LLC still pending, the defendant formed a new LLC, of which he was also the managing member. The defendant gave the new LLC a different name, but continued to operate it from the same address. The new LLC has the same telephone number as the original LLC. The original company's bookkeeper and receptionist stayed on, becoming a member in the new LLC.

The defendant then sent letters to the original LLC's seven clients, requesting to terminate the LLC's management of their properties. Next,

he called "[a]t least four" of the LLC's largest clients and invited them to "come over to the new company," which they did. The old company sold its office furniture for $3,500, which was roughly the amount that the defendant invested in the new company. As a result, the original LLC's total assets consisted of its remaining office furniture and two cars, worth in total approximately $16,500, and it ceased operations.

Based upon, among other things, the original LLC's lack of assets, the plaintiff amended her writ to add a count seeking to "pierc[e] the company veil" in order to hold the defendant individually liable. The defendant moved for summary judgment on this claim, which the trial court granted. The trial court then severed the claim against the LLC from the claims against Biren Properties. The plaintiff argues on appeal that the trial court erred when it dismissed her action against the defendant and when it granted summary judgment on her veil-piercing claim.

## II. The Defendant's Direct Liability

We begin with the plaintiff's argument that the trial court erred when it granted the motion to dismiss the actions against the defendant, individually. In reviewing the grant of a motion to dismiss, we assume the truth of the facts as alleged in the plaintiff's pleadings and construe all reasonable inferences in the light most favorable to the plaintiff. *Beane v. Dana S. Beane & Co.*, 160 N.H. 708, 711 (2010). We will uphold the granting of the motion if the facts pleaded do not constitute a basis for legal relief. *Id.*

Resolution of the issues in this case requires statutory construction. We review the trial court's interpretation of a statute *de novo. In re Guardianship of Nicholas P.*, 162 N.H. 199, 203 (2011). When construing New Hampshire statutes, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Id.* When the language of a statute is clear on its face, its meaning is not subject to modification. *Id.* We will neither consider what the legislature might have said nor add words that it did not see fit to include. *Id.*

The controlling statute here, RSA 304-C:25 (2005), governs the liability of LLC members to third-parties and provides as follows:

> Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company; and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the

limited liability company solely by reason of being a member or acting as a manager of the limited liability company.

The defendant argues that this provision insulates him from liability. The plaintiff counters that the defendant owed her family duties grounded in common law negligence and, therefore, the claims against him are not "solely by reason" of his status within the LLC. We begin with first principles.

"A member of an LLC generally is not liable for torts committed by, or contractual obligations acquired by, the LLC." *Allen v. Dackman*, 991 A.2d 1216, 1228 (Md. 2010). When, however, a member or manager commits or participates in the commission of a tort, whether or not he acts on behalf of his LLC, he is liable to third persons injured thereby. *See Sturm v. Harb Development, LLC*, 2 A.3d 859, 866 (Conn. 2010). A member remains personally liable for his own acts because RSA 304-C:25 governs a member's *vicarious liability* for an LLC's debts or obligations. *See Smith v. Isaacs*, 777 S.W.2d 912, 913 (Ky. 1989) (discussing Kentucky corporations statute). The statute has nothing to do with a manager's *personal liability*, including liability for his own negligence. *See id.*

Therefore, "[a]n LLC member is liable for torts he or she personally commits . . . because he or she personally committed a wrong, not 'solely' because he or she is a member of the LLC." *Allen*, 991 A.2d at 1229. The Connecticut Supreme Court, construing the phrase "solely by reason of being a member or manager," noted that, "although being a member or manager does not impose liability, the statute's use of the term 'solely' opens the door to other types of liability, such as common-law liability." *Sturm*, 2 A.3d at 868-69 (quotations and emphasis omitted). The court, therefore, construed the statute to mean that a member "must do more than merely be a member in order to be liable personally for an obligation of the limited liability company. The statute . . . does not preclude individual liability for members of a limited liability company if that liability is not based simply on the member's affiliation with the company." *Id.* at 869 (quotation omitted). This distinction has been characterized as "black letter, hornbook law." *Smith*, 777 S.W.2d at 914.

By contrast, a manager or member, "acting as an agent of [an LLC], is . . . protected from personal liability for making a *contract* where acting within his authority to bind the [LLC]." *Id.* at 913 (discussing corporations). Thus, "[w]here [an LLC] enters into a contract, the [manager's] signature on the contract, with or without a designation as to his representative capacity, does not render him personally liable under the contract." *Redmon v. Griffith*, 202 S.W.3d 225, 239 (Tex. App. 2006) (discussing

corporations). LLC members and managers who disclose that they are contracting on an LLC's behalf are not liable for a breach because they are not parties to the contract — only the LLC itself is. *See* RESTATEMENT (SECOND) OF AGENCY § 328, at 80 (1958) ("An agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal whom he has the power so to bind, does not thereby become liable for its nonperformance."). As a result, the issue of whether a manager, member, shareholder or officer can be liable for actions taken on a business entity's behalf is "sometimes framed as whether the duty arises solely from contract." *Greg Allen Const. Co., Inc. v. Estelle*, 798 N.E.2d 171, 174 (Ind. 2003).

▮ With these principles in mind, we turn to the plaintiff's claims. Although the plaintiff's writ alleges multiple theories of liability, her brief addresses only the defendant's personal liability for negligence. As a result, any objections to the trial court's dismissal of the plaintiff's other claims have been waived, and we affirm the trial court's order insofar as it dismissed them. *See Progressive N. Ins. Co. v. Argonaut Ins. Co.*, 161 N.H. 778, 785 (2011).

The negligence count of the plaintiff's writ states the following:

> The defendant[s] and their property manager owed a duty to maintain and rent the premises . . . in a habitable condition. Peeling and flaking paint, which contains lead in an apartment where children under six years old will reside, constitutes such a hazard as to make the apartment uninhabitable. Said duty extends to the Plaintiff[s] as lawful tenants of Defendant. The Defendants also owed a duty to plaintiffs to investigate, remedy, make safe and/or warn Plaintiffs of the dangers of peeling and flaking lead paint present in the rental unit.

We construe the quoted paragraph to allege that the defendant had an individual duty sounding in tort to "investigate, remedy, make safe and/or warn" the plaintiff about the dangers of flaking lead paint. The defendant argues that he had no such duty. He contends that although Biren Properties contractually delegated duties to his LLC, he himself assumed no duty to the plaintiff and, therefore, cannot be individually liable for a breach. We disagree.

▮ In *Sargent v. Ross*, 113 N.H. 388, 391 (1973), we abolished specialized tests for landlord negligence because they immunized individuals occupying the position of "landlord" from the "simple rules of reasonable conduct which govern other persons in their daily activities." We noted that "[t]he ground of liability upon the part of a landlord when he demises dangerous

property has nothing special to do with the relation of landlord and tenant. It is the ordinary case of liability for personal misfeasance, which runs through all the relations of individuals to each other." *Sargent*, 113 N.H. at 392 (quotation omitted). Therefore, whether or not one technically assumes the role of "property manager," "property owner," or "landlord," "[g]eneral principles of tort law ordinarily impose liability upon persons for injuries caused by their failure to exercise reasonable care under all the circumstances." *Id.* at 391.

■ *Sargent* thus clarified that what could be termed "landlord negligence" is simply an application of the common law principle that "[a] person is generally negligent for exposing another to an unreasonable risk of harm that foreseeably results in an injury." *Id.* Certainly, a property owner, like Biren Properties, upon leasing property assumes a duty not to expose its tenants to an unreasonable risk of harm. *Cf. Sturm*, 2 A.3d at 871 ("There is no question that a duty of care may arise out of a contract . . . ." (quotation omitted)). Similarly, as the defendant appears to concede, his LLC assumed a duty to maintain the property in a safe condition when it entered into the management agreement with Biren Properties. Contrary to the defendant's argument, however, the property owner's duty does not arise solely by virtue of its contractual relationship to the tenant and neither the LLC's duty nor the defendant's duty arises solely from the property management agreement. *See Stoiber v. Honeychuck*, 162 Cal. Rptr. 194, 208-09 (Ct. App. 1980) (imposing tort duty on agents of landlords).

■ Rather, as we made clear in *Sargent*, 113 N.H. at 393-94, a tort duty exists, independent of any contractual obligation, because, under these circumstances, a reasonable person would exercise a certain degree of care for the protection of a vulnerable tenant. Indeed, the negligence that *Sargent* addressed stems from a landlord's ability to anticipate and avoid risks during the tenancy, not purely from the contractual relationship. *See Sargent*, 113 N.H. at 394 ("[T]he landlord is best able to remedy dangerous conditions."); *Kline v. Burns*, 111 N.H. 87, 92 (1971) ("Common experience demonstrates that the landlord has a much better knowledge of the conditions of the premises than the tenant."). As the allegations in this case demonstrate, a party without a direct contractual duty who nonetheless possesses the knowledge and authority of a landlord may be held liable for his own negligence. Under *Sargent*, such a person cannot immunize himself from the "liability for personal misfeasance, which runs through all relations of individuals to each other," by abstaining from a contractual relationship with the party to whom he owes a duty of care. *Sargent*, 113 N.H. at 392 (quotation omitted).

■ Here, the plaintiff alleges circumstances under which a reasonable person may be held to a greater degree of care than the defendant exercised. Specifically, she alleges that: (1) the defendant, personally, managed the property; (2) he "had prior knowledge of lead paint dangers"; and (3) he had "actual knowledge of the fact that the rental . . . had peeling and flaking paint . . . that probably contained lead." She further alleges that the defendant "[i]gnor[ed] this prior knowledge, and . . . wholly fail[ed] to further investigate . . . and make safe the rental, or at least warn the plaintiff[]."

The defendant's management of the apartment and his superior knowledge of its hazardous condition suffice to establish an individual tort duty to avoid "exposing [the plaintiff] to an unreasonable risk of harm." *Id.* at 391. Thus, because these allegations state facts entitling the plaintiff to relief, her negligence claim survives the defendant's motion to dismiss.

*III. Piercing the Limited-Liability Veil*

We now determine whether the defendant may be held liable for the LLC's debts under the so-called "veil-piercing" doctrine. We review summary judgment rulings by considering the affidavits and other evidence in the light most favorable to the non-moving party. *First Berkshire Bus. Trust v. Comm'r, N.H. Dep't of Revenue Admin.*, 161 N.H. 176, 179 (2010). If this review does not reveal any genuine issues of material fact, *i.e.*, facts that would affect the outcome of the litigation, and if the moving party is entitled to judgment as a matter of law, we will affirm. *Id.* We review the trial court's application of law to the facts *de novo. Id.*

■ Turning to the merits, although we have yet to address whether the members and managers of an LLC can be held personally liable for its debts under the veil-piercing theory we have applied to corporations, the parties have assumed for analytical purposes that our corporate veil-piercing cases apply to LLCs, and we will do the same. Ordinarily, corporate owners, like LLC members and managers, are not liable for a company's debts. *Norwood Group v. Phillips*, 149 N.H. 722, 724 (2003); *see* RSA 304-C:25. The company and its owners are considered separate legal entities. *See Norwood Group*, 149 N.H. at 724. In particular cases, however, a corporation and those owning all of its stock and assets will be treated as identical. *Id.* Thus, for instance, we will pierce the veil and assess individual liability where the owners have used the company to promote an injustice or fraud upon the plaintiff, as is argued here. *Id.* In such a case, we will disregard the fiction that the corporation is independent of its stockholders and treat the stockholders as the corporation's "alter egos." *Id.* (quotation omitted).

Here, the plaintiff argues that the LLC's transfer of its accounts to a new company after the plaintiff brought her claims and its failure to insure itself adequately create genuine issues of material fact as to whether the veil should be pierced. The defendant counters that he had a right to establish a new LLC and move his accounts to it and that a failure to insure cannot, in itself, justify veil piercing. Because we conclude that genuine issues of material fact surrounding the LLC's transfer of its accounts to the new company made summary judgment improper, we do not address what impact, if any, the LLC's failure to insure has upon the veil-piercing analysis.

In *Terren v. Butler*, 134 N.H 635, 639-41 (1991), and *Druding v. Allen*, 122 N.H. 823, 827-28 (1982), we addressed the circumstances under which a company's distribution of assets after a claim had been brought against it permitted piercing of the corporate veil. In both cases, the individual defendants were the sole officers and shareholders of the corporations. *Terren*, 134 N.H. at 640; *Druding*, 122 N.H. at 824. In both cases, the officers disregarded some corporate formalities, while complying with others. *Terren*, 134 N.H. at 640 (defendants never paid stated consideration for their shares in the corporation); *Druding*, 122 N.H. at 827-28. In *Terren*, 134 N.H. at 641, we upheld the trial court's decision to hold the officers personally liable for corporate obligations, but in *Druding*, 122 N.H. at 828, we overturned the trial court's decision to pierce the veil.

The different outcomes resulted from how the officers handled assets when a lawsuit jeopardized corporate solvency. In *Terren*, 134 N.H. at 641, "the corporation continued to distribute its assets at a time when several claims had been made against it." In *Druding*, 122 N.H. at 825, 828, by contrast, during "the period between the initial filing of the . . . actions and the rendering of the judgments," "corporate assets remained constant."

In this case, the defendant argues that the LLC never had many assets, and that he simply decided to cease operations and move his largest clients to a new LLC — also managed by him — with a different name, but with the same address and telephone number. When asked to justify this unusual and ostensibly arbitrary business decision, the defendant explained that he "[j]ust wanted to start fresh."

To be sure, the defendant correctly argues that he had every right to establish a new LLC and to transfer the original LLC's clients to it. However, that the defendant made this "fresh start" when his company remained a party to this case, could permit a finding that the limited-liability identity was used to promote an injustice upon the plaintiff. Thus, based upon our review of the depositions and other evidence in the light

570

most favorable to the plaintiff, we cannot conclude that the defendant is entitled to judgment as a matter of law. Accordingly, the trial court erred in granting summary judgment.

*Affirmed in part; reversed in part; and remanded.*

CONBOY, J., concurred; GALWAY, J., retired, specially assigned under RSA 490:3, concurred.